**UNITED STATES of America, Appellee,**

v.

**Ronald ROBINSON, Defendant-Appellant.**

**No. 170, Docket 76–1214.**

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1976.

Decided Nov. 10, 1976.

David J. Gottlieb, The Legal Aid Society, Federal Defender Services Unit, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant.

Jonathan M. Marks, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (David G. Trager, U. S. Atty., Alvin A. Schall, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y., of counsel), for appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This case involves a variation on an old theme and demonstrates, once again, that it is often easiest to overlook the obvious. *See, e. g.,* Poe, The Purloined Letter (1845).

· According to the government, appellant Robinson was a "major fence" for stolen government checks. He was indicted, and subsequently convicted, by a jury, in the

United States District Court for the Eastern District of New York, John R. Bartels, Judge, on seven counts of uttering forged United States Treasury checks with intent to defraud the United States, seven counts of possessing those same checks knowing them to be stolen from the mails and one count of conspiracy to steal from the mails, forge and utter United States Treasury checks.[1]

At trial the jury heard the following evidence. Co-conspirators Robinson and Black opened a grocery store in Jamaica, New York, under the name of "New York Boulevard Deli." Between April and August of 1975, they purchased United States Treasury checks and New York City Welfare checks for one-third of their face value and deposited them in two commercial checking accounts. After the checks cleared, they withdrew the funds and divided the profits. Approximately $70,000 in checks was "laundered" in this fashion. Robinson provided the initial capital investment to get the business started, but Black ran its day-to-day activities.

Black, an individual whose prior record is charitably described in appellant's brief as "formidable," pleaded guilty to the conspiracy charge and testified at trial against Robinson, a 38 year old Army veteran and the proprietor of a bar and a liquor store. At trial, Robinson, who had no prior arrests, claimed that he merely loaned Black the necessary funds to start a grocery store. Robinson disclaimed all knowledge of the fencing of stolen government checks.

One of the payees of the Treasury checks testified that she always received her Social Security checks by mail, that she did not receive the check which Robinson was alleged to have possessed and uttered, that the endorsement on the check was not hers and that she had no account at the bank in which the check was deposited. It was stipulated that if the other seven payees were called they would give similar testimony about their respective checks.

### I. *The Possession Counts*

Robinson claims that the government's proof was insufficient to establish that the Treasury checks he possessed were stolen from the mails. We agree.

In a prosecution for theft from the mails where eyewitness testimony is lacking, the government usually produces evidence that the sender placed in the mails the item alleged to have been stolen, along with evidence from the addressee that the item was never received. From this evidence the jury can infer that an item which is found in improper hands was stolen from the mails.

In *United States v. Hines,* 256 F.2d 561 (2d Cir. 1958), Chief Judge Clark explained that,

> To procure a conviction [under 18 U.S.C. § 1708] the prosecution had to show that the check actually had been stolen from the mails and that the defendant unlawfully possessed it, knowing that it was stolen. . . . the evidence adequately supports the conclusion that the check was actually stolen from the mails, *for a letter properly mailed and never received by the addressee, but found in quite improper and misusing hands, can be found to have been stolen from the mails in the absence of any other explanation being proffered.* Id. at 563–64. (Emphasis added)

In the instant case the government produced no evidence from the sender but limited its proof to evidence that the checks were always received by the addressees by mail,[2] they were issued by three disbursement offices outside New York,[3] they did not ar-

---

1. The indictment covered eight checks. Robinson was acquitted of uttering and possessing one of those checks.

2. The witness who actually testified said she "always" received her checks by mail. With respect to the other payees, the prosecutor told the jury that it was stipulated that they "ordinarily" received their checks by mail.

3. Birmingham, Alabama; Philadelphia, Pennsylvania; Chicago, Illinois. Only one of the 8 checks was issued by a New York disbursement office. That check was not the same check as to which Robinson was acquitted.

rive, they were endorsed by someone other than the payee and they were deposited in accounts of a New York business in New York banks at which the payees had no accounts. Based upon this evidence, the government argues in this Court that

> the only way the seven checks could have been stolen, but not from the mail, and still have arrived in the Eastern District would have been for them to have been taken from the separate disbursing offices and then transported individually to the [grocery store]. This is a most unlikely possibility.

The government's proof regarding the disbursement offices is based upon information printed on the checks that was never explained to the jury. The origins of the checks were never mentioned at any time during the trial. Moreover, the inference suggested by the government is impermissible. It violates the principle that the jury must consider the defendant's guilt or innocence as to each count of the indictment separately. See 1 E. Devitt & C. Blackmar, Federal Jury Practice And Instructions § 17.02 (2d Ed. 1970). Thus, although it may be "most unlikely" that the seven checks would all be stolen from three different disbursement offices and then transported individually to the grocery store, it is not so unlikely that an individual check would be so stolen and so transported. The individual checks, which were the subject of separate counts of the indictment, cannot be lumped together to support the inference urged by the government. With respect to Robinson's guilt or innocence as to any particular check, evidence concerning other

checks, whether or not included in the indictment, was merely similar act evidence. Such evidence, although relevant and admissible to prove Robinson's knowledge of theft, was not relevant to prove that any particular check covered by the indictment was stolen from the mails. See Fed.R.Evid. 404(b). Judge Bartels correctly instructed the jury that evidence concerning checks not involved in the indictment, of which there were many, was admitted for the limited purpose of proving knowledge. Consequently, in determining whether there was sufficient evidence to support the charge that the checks possessed were stolen from the mails, we cannot draw any inference from the fact that some checks originated from different out-of-state disbursement offices.

Ignoring, as we must, the impermissible inference urged by the government, we find that the government's proof on the issue of theft from the mails amounts to nothing more than proof of non-receipt.

■ In its casual presentation of this case, the government overlooked an obvious issue, and one easily proved. All that was required was evidence demonstrating that the checks were duly placed in the mails. Cf. United States v. Toliver, 541 F.2d 958, 966 (2d Cir. 1976). We hold that proof of non-receipt, without more, is insufficient even circumstantially to sustain an inference that the checks were stolen from the mails.[4] Accordingly, we reverse Robinson's conviction on the possession counts and direct that the indictment on those counts be dismissed.[5]

---

4. In *Smith v. United States,* 343 F.2d 539 (5th Cir. 1965) (Wisdom, J.), the Fifth Circuit found sufficient circumstantial evidence of mailing where the "payees testified that previously they had always received their checks by mail, and [a co-defendant] testified that he took the checks from [a hotel] mailbox." *Id.* at 544. The case at bar is distinguishable because here there was no evidence that anyone took the checks from mailboxes or any other postal repository. Although there was testimony that one of the individuals with whom Black and Robinson had dealt was a postal employee, there was no evidence that the checks that employee sold them were the checks covered

by the indictment. In *Smith* there is dictum to the effect that "proof of receipt through the mail is sufficient to prove the mailing." *Id.* If all that was meant by that language was that proof of receipt has some probative value, then we agree. If what was meant was that such proof, standing alone, would be sufficient, then we respectfully disagree.

5. Because the ground for our reversal relates not to a trial court error, but rather to a failure in the government's proof, a retrial of appellant on the possession counts would violate his double jeopardy rights. *See United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232

## II. The Uttering Counts

■ The uttering counts charge Robinson with negotiating forged Treasury checks, knowing them to be forged, and with intent to defraud the United States. Under 18 U.S.C. § 495, the government must prove "intent to defraud." Thus, specific intent is an essential element of the crime of uttering. *United States v. Ellison*, 494 F.2d 43 (5th Cir. 1974); *United States v. Sullivan*, 406 F.2d 180, 186 (2d Cir. 1969); *Ross v. United States*, 374 F.2d 97, 101 (8th Cir.) (Blackmun, J.), *cert. denied*, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967). Judge Bartels so charged the jury, but he also charged that,

> In determining the issue of intent in this case a jury may reasonably infer, as I said before, that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.

> So, unless the contrary appears from the evidence, the jury may draw the inference that the defendant intended all the consequences which one in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the defendant.

In *United States v. Bertolotti*, 529 F.2d 149 (2d Cir. 1975), this Court explained that,

> We have for many years warned against the use of this type of charge, *United*

(1975); *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed.2d 335 (1950), sustains this Court's power to order a new trial after a reversal for insufficiency of evidence when the defendant asks for a new trial. *See Sapir v. United States*, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955); *Forman v. United States*, 361 U.S. 416, 425–26, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960). When a defendant asks for a new trial, he cannot be heard to complain, on double jeopardy grounds, that he has been given what he requested. Robinson did not ask for a new trial, however, he asked for a dismissal of the possession counts —thereby preserving his double jeopardy rights.

**6.** It is true that intent to defraud *the United States* need not be specifically proven because the defendant is charged with knowledge that the ultimate loss from his uttering of a forged Treasury check will be suffered by the United

*States v. Barash*, 365 F.2d 395, 402–03 (2d Cir. 1966), and are somewhat surprised at its continued appearance. Given our disposition of this case, there is no need to determine whether the [district court's] erroneous charge constitutes reversible error. We wish, however, to take this opportunity to again stress our disapproval of the "natural and probable consequences" charge and to remind trial judges that its continued use may jeopardize otherwise sound convictions. *Id.* at 159.

■ We cannot agree with the government that the charge was "entirely correct."[6] However, since defense counsel failed to object to the charge at the time it was given, we must determine the effect of the error. In order to make that determination, an analysis of the nature of the error inherent in the "natural and probable consequences" charge is necessary.

■ The objectionable nature of the charge was ably summarized in *Cohen v. United States*, 378 F.2d 751, 755 (9th Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967):

> The jury may mistakenly believe that it is permissible to infer specific knowledge or intent solely from the doing of a particular act, without regard to the totality of circumstances; or that the occurrence of the particular act shifts the burden of proof of knowledge or intent from the prosecution to the defense; or that the

States. *United States v. Sullivan*, 406 F.2d 180, 186–87 (2d Cir. 1969). However, it is not true, as the government appears to argue, that the "natural and probable consequences" charge was designed to explain that concept to the jury. Judge Bartels instructed the jury that, "it is not necessary that he intended to defraud a particular person as long as he has the intent that the check had been cashed or passed or used as true and a genuine check, although in actuality, it was forged," and he then gave the "natural and probable consequences" charge. It is quite clear that "the issue of intent" to which Judge Bartels referred in his "natural and probable consequences" charge was the intent to pass the forged check as genuine, not the intent to defraud a particular person. Judge Bartels had just told the jury that this latter type of intent was not an issue in the case.

question is whether a reasonable man in similar circumstances would have had the requisite knowledge or intent, rather than whether the accused actually had it. Thus, the "natural and probable consequences" charge, particularly when, as here, it contains the phrase "unless the contrary appears from the evidence," is a burden-shifting charge which has the potential for misleading the jury with respect to the requirement that the government must prove every element of an offense beyond a reasonable doubt. *United States v. Barash*, 365 F.2d 395, 402–03 (2d Cir. 1966) (Friendly, J.); *see United States v. Erb*, 543 F.2d 438, 447 (2d Cir. 1976).

■ In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court held that the due process clause requires the prosecution to bear the burden of proof beyond a reasonable doubt on every element that constitutes the crime charged against the defendant. Under *Mullaney*, therefore, the error inherent in the "natural and probable consequences" charge takes on a constitutional dimension, and must be judged accordingly.[7] While it is true that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), we need not decide whether the right here involved falls within that category, for the government has failed to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828. *See also United States v. Toliver, supra,* 541 F.2d at 964–966 (2d Cir. 1976). Although defense counsel failed to object to the "natural and probable consequences" charge, we cannot presume a waiver of Robinson's rights under *Mullaney v. Wilbur, supra,* from the

silent record. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We note that no objection was made to the charge involved in the *Mullaney* case. Indeed, the Maine Supreme Judicial Court, which upheld Wilbur's conviction, found the issue cognizable because of its constitutional implications. *See Mullaney v. Wilbur, supra,* 421 U.S. at 688 n.7, 95 S.Ct. 1881.

■ Judge Bartels instructed the jury that the government bore the burden of proof beyond a reasonable doubt, and that intent was an essential element of the uttering charge. Only one instruction, however, focused on the manner in which intent may be proven, and that instruction consisted solely of the "natural and probable consequences" charge quoted above. Viewing the instructions as a whole, we find little that might have served to cure the error or to insure that the jury was not misled. The instructions on the burden of proof beyond a reasonable doubt were general in nature, while the instruction on intent was specific. We cannot conclude that the jury ignored the specific, erroneous instruction. On the contrary, the jury probably applied the erroneous instruction and believed the government had satisfied its burden by proving mere negotiation of the checks. Even though the government presented a relatively strong case on the uttering counts, we are unable to conclude that the erroneous charge was harmless beyond a reasonable doubt. Accordingly, Robinson's conviction on the uttering counts must be reversed.

### III. *The Conspiracy Count*

The final question with which we must deal relates to appellant's conviction on the conspiracy count. Appellant argues that

---

**7.** In *United States v. Erb,* 543 F.2d 438, 447 (2d Cir. 1976), this Court declined to find plain error where the defendant failed to object to the trial court's instruction that he was "presumed to intend natural and probable or ordinary consequences of his acts." The erroneous instruction in *Erb* did not rise to the level of a constitutional error because there the trial judge gave additional instructions on the issue of intent, thereby insuring that the jury under-

stood which side bore the burden of proof. Moreover, that instruction did not contain the phrase "unless the contrary appears from the evidence." This phrase magnifies the error inherent in the "natural and probable consequences" charge, for as Judge Friendly pointed out in *United States v. Barash,* 365 F.2d 395 (2d Cir. 1966), the contrary evidence to which it refers is "presumably evidence the defense would have to present." *Id.* at 402.

the "natural and probable consequences" charge tainted that conviction, as well as the conviction on the uttering count, because conspiracy is a crime requiring specific intent. *See United States v. Bertolotti*, 529 F.2d 149, 159 (2d Cir. 1975).

We note at the outset, although appellant does not assign it as error, that Judge Bartels' charge on conspiracy did not adequately instruct the jury that the government was required to prove beyond a reasonable doubt that Robinson had the specific intent to commit the substantive crimes of theft from the mails, forgery or uttering. His charge on conspiracy does not even contain the word "intent," although it does contain the instruction that, "[i]t is sufficient that the minds of the parties meet understandingly on their common purpose to commit the crime."

The government maintains that it is clear that the "natural and probable consequences" charge was given in connection with the uttering count only, and that it could not have tainted the conspiracy count. While it is true that Judge Bartels was instructing the jury on the uttering count immediately before he gave the erroneous charge, because the only instruction dealing with the element of intent was the "natural and probable consequences" charge, and because the instruction on the conspiracy count was not particularly clear with respect to the requirement of specific intent, we are not convinced that the conspiracy conviction was untainted. Nevertheless, we might be inclined to affirm the conspiracy conviction if its validity were not suspect for other reasons.

The indictment charges Robinson with conspiracy to steal from the mails (18 U.S.C. § 1708), forge and utter (18 U.S.C. § 495) Treasury checks.

■ Because we have already concluded that the erroneous instruction on intent renders Robinson's conviction on the uttering count invalid, and because a conspiracy to commit a particular substantive offense cannot exist without the same degree of intent required for the substantive offense, *Ingram v. United States*, 360 U.S. 672, 678,

79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), it necessarily follows that Robinson's conviction on the conspiracy count, to the extent it reflects a conspiracy to utter, cannot stand.

■ Similarly, to the extent the conspiracy conviction was based on a conspiracy to forge, it cannot stand. First of all, the court gave no instruction relating to the substantive crime of forgery, and did not tell the jury that intent to defraud was an essential element of that crime. It would therefore be most remarkable if the jury found Robinson guilty of the crime of conspiring to forge without knowing what constituted the crime of forgery. Second, although there can be no doubt that the checks were forged, the evidence was at best inconclusive regarding the identity of the forger. The government's own handwriting expert was unable to say that Robinson or Black forged the endorsements, and he could only say that some of the endorsements were "unnatural writings." Thus, it is clear that the jury did not, and could not, convict Robinson because of a conspiracy to forge the Treasury checks.

■ The only remaining type of conspiracy with which Robinson was charged was conspiracy to steal from the mails. Although the record contains, more by chance than by design, sufficient evidence to sustain a conviction on that charge, we nevertheless find it necessary to reverse. Properly charged, the jury could have found that Robinson and Black, by fencing checks they knew to be stolen, were engaged in a conspiracy to steal from the mails. The court's charge, as it related to that kind of a conspiracy, was wholly inadequate. Although Judge Bartels did read the conspiracy count of the indictment, which alleged a conspiracy to steal from the mails, and although he read the first paragraph of 18 U.S.C. § 1708, which makes it a crime to steal from the mails, no further guidance was given. Indeed, the reason Judge Bartels read 18 U.S.C. § 1708 in its entirety was because he wanted to make sure the jury understood the last paragraph which makes it a crime to possess matter stolen from the

mails, one of the substantive crimes with which Robinson was charged. There was no further explanation of the crime of conspiracy to steal from the mails. Judge Bartels' failure to offer further explanation was quite understandable, however, for, aside from the indictment, the government had never suggested that Robinson conspired to steal from the mails. The government's focus, throughout the trial, had been on a conspiracy to forge and utter, as their failure to produce sufficient proof of theft from the mails amply demonstrates.

Although none of these irregularities, standing alone, would require us to reverse, together, they cast considerable doubt on the validity of the conspiracy conviction, and, since there must be a new trial on the uttering counts in any event, we feel that the interests of justice require a new trial on the conspiracy count as well.

The conviction on all counts is reversed and the case is remanded for a new trial on the uttering and conspiracy counts and the district court is instructed to dismiss the indictment as to the possession counts.