**Bobby WASHINGTON,
Petitioner-Appellee-Cross-Appellant,**

v.

**David HARRIS, Superintendent of Green Haven Correctional Facility,
Respondent-Appellant-Cross-Appellee.**

Nos. 976, 1358, Docket Nos. 80–2396, 81–2015.

United States Court of Appeals, Second Circuit.

Argued April 3, 1981.

Decided June 8, 1981.

Allen H. Saperstein, Asst. Dist. Atty., Bronx County, New York City (Mario Mero-

la, Dist. Atty., Bronx County, Steven R. Kartagener, Asst. Dist. Atty., Bronx County, New York City, of Counsel) for respondent-appellant-cross-appellee.

Barry Bassis, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner-appellee-cross-appellant.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and MALETZ, Judge, United States Court of International Trade.*

FEINBERG, Chief Judge:

David Harris, Superintendent of Green Haven Correctional Facility, appeals from an order of the United States District Court for the Southern District of New York, John M. Cannella, J., which granted the amended petition of Bobby Washington for a writ of habeas corpus. Washington cross-appeals from an earlier order of the district court denying his initial habeas corpus petition. For reasons appearing below, we vacate the judgment of the district court, and remand the action to that court.

## I.

Only a brief recitation of the facts is necessary to clarify the legal questions at issue in this case. For about two years before June 1973, Washington and his family had been harassed and occasionally assaulted by Peggy Mickens; she and Washington had filed criminal complaints against each other during this time. On June 4, 1973, Washington and his wife were standing in front of their apartment in the Bronx, when Mickens approached and attacked Mrs. Washington with a knife. Washington, in his car, took a pistol from the glove compartment, intervened in the struggle between his wife and Mickens, and shot Mickens through the eye. He then wrested Mickens's knife from her, and slashed her repeatedly all over her body. Mickens died, and Washington was indicted for murder. At trial, there was medical testimony that the bullet wound alone would not have caused Mickens to lose consciousness, and that many of the knife wounds inflicted on her were "defensive," being the product of her attempts to ward off Washington's knife attack, or to grab the knife away. There was also eyewitness testimony that after Mickens fell to the ground, Washington leaned over and stabbed her in the throat; Mickens's throat wounds severed her main throat artery and extended back to her backbone. Washington did not testify and called no witnesses on his behalf. His counsel relied on a theory of self defense, see N.Y. Penal Law § 35.15, and argued that since Washington was acting in defense of his wife and himself, his actions were justified.

In November 1975, Washington was convicted in the New York Supreme Court, Bronx County, of murder in the second degree as well as criminal possession of a weapon in the third and fourth degrees. Washington was sentenced to concurrent terms of fifteen years to life and zero to seven years on these convictions. The Appellate Division affirmed without opinion in 1977; leave to appeal to the New York Court of Appeals was denied, as was Washington's pro se petition for a writ of certiorari to the United States Supreme Court.

In 1979, Washington filed a petition for a writ of habeas corpus, alleging that various errors of constitutional dimension occurred at his trial. Judge Cannella denied the writ in a decision reported at 486 F.Supp. 1037 (1980). The district judge later granted Washington a certificate of probable cause, and Washington took an appeal to this court; thereafter, however, on Washington's motion and with the consent of the State, we remanded the case to the district court for consideration of an amended petition for a writ. It was this amended petition that the district judge granted. He concluded that the state trial court had erred in giving unconstitutional and prejudicial instructions to the jury that convicted

* Honorable Herbert N. Maletz, Judge, United States Court of International Trade, sitting by designation.

Washington. This appeal by the State, and the cross-appeal by Washington, followed.

## II.

Appellant first argues that Washington failed to exhaust his state remedies on the issue of the jury instructions, and that the district judge therefore erred in reaching the merits of that issue. The jury instructions in dispute related to the question of intent, which is a necessary element of the crimes of murder in the second degree and criminal possession of a weapon in the fourth degree.[1] In instructing the jury with respect to the issue of intent in general, the state trial court said:

> On the question of intent, you may infer that a person intends that which is the natural and necessary and probable consequences of the acts performed by him and unless the act was done under circumstances to preclude the existence of such intent, you have a right to find from the results produced an intention to effect it.

Later, in instructing the jury with respect to the charge of murder, the trial court reminded the jury of his earlier instruction and further stated that:

> [O]n the subject of intent, I charge you that you may consider the condition of the alleged victim, and the number and type of wounds allegedly inflicted as well as any of the other surrounding circumstances you adduce from the evidence in this case which you determine have been proven by evidence beyond a reasonable doubt.

The judge also charged the jury regarding manslaughter, and in the course of this instruction said:

I have already instructed you on the subject of intent. You will recall, intent is a mental operation and can be proved only by facts and circumstances surrounding the acts.

Our law says a person intends that which is the necessary and natural consequence of any act performed by him.

Finally, with respect to the charge of criminal possession of a weapon in the fourth degree, the trial court instructed the jury as follows:

> You will observe that intent is an essential element of this crime. You will recall my instruction to you on intent; that it is a mental operation that can be proved only by the facts and circumstances surrounding the act; and a person intends that which is the necessary and natural consequences of any act he performs.

Washington's trial counsel took no exceptions to any of these instructions. Appellant argues that this failure to object at trial prevented the New York Court of Appeals from ever considering the propriety of the instructions, and therefore constituted an incomplete exhaustion of state remedies that now bars Washington from presenting this issue in a federal habeas petition. Appellant cites *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), and *Wainwright v. Sykes*, 433 U.S. 72, 87–90, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977), as support for his position.

■ This argument is not persuasive. In *Callahan v. LeFevre*, 605 F.2d 70 (2d Cir. 1979), a case with a procedural history nearly identical to that of the present case,[2] this

---

1. Intent is not a necessary element of the crime of criminal possession of a weapon in the third degree, as charged in this case. See N.Y. Penal Law § 265.02(4) (possession of a loaded firearm).

2. In *Callahan*, the defendant made no objection at trial respecting the jury instruction on which habeas relief was later granted. 605 F.2d at 72. He made an objection to the instruction only in the Appellate Division, id. at 73–74 n.6, which then affirmed without opinion. Leave to ap-

peal to the New York Court of Appeals was denied. Id. at 72.

We note that appellant suggests that Washington did not adequately raise his objection to the jury instructions even in the Appellate Division, since he "relegated this argument ... to but a single, one-sentence footnote in his brief." We do not accept the remarkable premise that the Appellate Division does not read the footnotes of briefs submitted to it. Moreover, the argument was in fact raised in the main text of the brief.

court was presented with a jury instruction that arguably denied a criminal defendant a fair trial, by "remov[ing] the element of intent and the defense of justification from the jury's consideration," id. at 73. We held that the instruction could be challenged in a federal habeas proceeding, even though no objection to that instruction had been raised at trial, so long as the issue was properly raised in the Appellate Division. Id. at 73 n.6. Of course, if the result in *Callahan v. LeFevre* were inconsistent with *Picard v. Connor* or *Wainwright v. Sykes*, we would not follow *Callahan*. But there is no such inconsistency. *Picard v. Connor* directs federal courts to require that state prisoners "normally exhaust available state judicial remedies before [the courts entertain] petition[s] for habeas corpus," 404 U.S. at 275, 92 S.Ct. at 512. *Wainwright v. Sykes* held that when a state criminal defendant failed to challenge the validity of his confession at trial, thereby waiving state appellate review of the issue, federal habeas review of that issue was barred as well, absent a showing of "cause" for the failure to timely challenge the confession, and of actual "prejudice" arising from its admission at trial. *Wainwright v. Sykes* was based on the principle of comity; the Court reasoned that federal courts should not undercut the valuable contemporaneous-objection requirement adopted by many states. This reasoning would apply to the present case only if it were established, first, that New York actually had a contemporaneous-objection requirement for claims such as the one Washington now advances, and, secondly, that this requirement was actually enforced by the state courts themselves. On the record before us, we cannot conclude that these prerequisites are both satisfied.

New York has long had a contemporaneous-objection requirement for most claims asserted on appeal. But it is well established that "no exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right." *People v. McLucas*, 15 N.Y.2d 167, 172, 256 N.Y.S.2d 799, 204 N.E.2d 846 (1965). In *People v. Patterson*, 39 N.Y.2d 292, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976)—decided while Washington's state appeal was pending—the New York Court of Appeals construed the exception described in *McLucas* to apply to a defendant's contention, not raised at trial or before the Appellate Division, that the instructions given to his jury had improperly shifted the burden of proof onto him on an important jury question. The *Patterson* court held that "the error complained of [went] to the essential validity of the proceedings conducted below," and therefore held the defendant's contention to be reviewable as "a question of law." Thus, when the Appellate Division affirmed Washington's conviction in 1977, *Patterson* represented the latest pronouncement of the highest New York court regarding appellate review of points not objected to at trial, and it apparently applied to Washington's claim.

In 1980, the New York Court of Appeals re-examined the issue presented in *Patterson*. *People v. Thomas*, 50 N.Y.2d 467, 429 N.Y.S.2d 584, 407 N.E.2d 430 (1980). The *Thomas* court held that it could not review a jury instruction identical to one of those now challenged by Washington, because the *Thomas* defendant had not made a contemporaneous objection. Appellant urges in this court that *Thomas* was always the implicit rule in New York, and that the test utilized in *Patterson* never applied to claims such as Washington's. Appellee disagrees, and argues that in its 1980 decision in *Thomas*, the New York Court of Appeals limited its jurisdiction by its interpretation of *Patterson*. We do not think it is necessary for us to decide this issue of state law, for one thing is clear. When Washington first raised his objection to the jury instructions, in his Appellate Division brief, the State's reply brief did not assert any procedural bar to that objection. Rather, the reply brief addressed the objection on the merits. Thus, it appears that New York at that time had no contemporaneous objection requirement for claims such as Washington's, or that, at the very least, appellant here (representing the interests of the State of New York itself) did not believe that the requirement applied. This court is mindful

of its obligations, under *Picard v. Connor* and *Wainwright v. Sykes,* to reinforce the primacy of state judicial remedies and to enforce state procedural rules. But we see no warrant in those cases for guarding state procedural rules more vigilantly than the State itself does.

In pressing the alleged procedural bar, the State relies on our recent decision in *Taylor v. Harris,* 640 F.2d 1 (2d Cir. 1981). But defendant there, unlike Washington, failed to object to his jury instruction not only at trial but also in the Appellate Division. Thus, it was quite natural for this court in *Taylor* to infer that the Appellate Division's silence did not imply an adjudication on the merits of the jury instruction. See *Taylor v. Harris, supra,* at 2 n.3. The facts of the present case, where the issue was raised and answered on the merits in the Appellate Division, fairly impel us to infer from the Appellate Division's silence that it did pass on the merits of the issue.

This conclusion is reinforced by our decision in *Gruttola v. Hammock,* 639 F.2d 922 (2d Cir. 1981). The *Gruttola* defendant failed to raise his objection at trial, and when he raised his claim in the Appellate Division, "the State immediately countered that the . . . claim had not been timely made," id. at 929. Thus, as in *Taylor,* it was natural for this court to infer that the state appellate court did not reach the merits of the claim. In the present case, where the State addressed Washington's claim on the merits in its brief in the Appellate Division, the opposite inference is the more natural. The present result finds further support in *Alburquerque v. Bara,* 628 F.2d 767 (2d Cir. 1977). In that case, the defendant objected at trial and in the Appellate Division to the procedure that later was the basis of a federal habeas petition. This court noted that "no reasoned, factually substantiated opinion has been rendered by the state courts holding that Alburquerque did not meet the procedural requirements" for raising his claim in the state courts in a cognizable manner. In light of this fact, we concluded that Alburquerque's objection gave the state adequate notice of his claim, and therefore that the deference to state

procedural rules required of federal courts by *Wainwright v. Sykes* was not implicated in the decision to reach the merits of the case. See id. at 772-75.

In short, we think that Washington is not barred from raising his present claims by his failure to object at trial.

### III.

We turn then to the merits of Washington's claims respecting the jury instructions set forth above. In his amended habeas petition Washington argued that these instructions violated his right to due process of law, by shifting to him the burden of proof on the issue of intent. He supported his argument by citation to *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *United States v. Robinson,* 545 F.2d 301 (2d Cir. 1976). The district judge agreed with Washington's argument, concluding that, "[r]ead as a whole, the jury instructions give the impression that the jury was 'not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it,'" quoting *Sandstrom, supra,* 442 U.S. at 515, 99 S.Ct. at 2455. Because we think that this conclusion rested upon an overly broad reading of *Sandstrom* and *Robinson,* and moreover intrudes upon an important province of state law, we vacate the judgment of the district court, and remand the action.

The deprivation of due process in *Sandstrom* occurred when the trial judge instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513, 99 S.Ct. at 2453. Similarly, the instruction we condemned in *Robinson* read as follows:

In determining the issue of intent in this case a jury may reasonably infer, as I said before, that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.

So, unless the contrary appears from the evidence, the jury may draw the in-

ference that the defendant intended all the consequences which one in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the defendant.

545 F.2d at 305. The instructions given in the present case before and during discussion of the murder charge differ in important respects from the objectionable *Sandstrom-Robinson* ones. Where the *Sandstrom* instruction stated that "[t]he law *presumes*" intent from actions, which language was held to remove from the prosecution the burden of proving intent beyond a reasonable doubt, the first instruction given to Washington's jury explicitly said that "you *may infer*" intent from actions. Cf. *United States v. Davis*, 608 F.2d 698 (6th Cir. 1979), cert. denied, 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980). This instruction was then further qualified by a second one, which said that the jury could consider the condition and wounds of the victim, as well as "the other surrounding circumstances," in assessing intent.

By the same token, the *Robinson* instruction stated that the inference of intent from actions could be drawn "unless the contrary appears from the evidence," arguably implying that the defendant was obliged to put on opposing evidence. By contrast, the first instruction given to Washington's jury stated that the inference could be drawn "unless the act was done under circumstances to preclude the existence of such intent." This form of words simply does not carry the same burden-shifting implication found in *Robinson*. We note that the New York Court of Appeals agrees, since it recently held that, under a proper construction of *Sandstrom*, these instructions are not defective. See *People v. Getch*, 50 N.Y.2d 456, 465–66, 429 N.Y.S.2d 579, 407 N.E.2d 425 (1980). In short, while we do not suggest that the State judge's charge was a model to be followed in the future,[3] we find no constitutional error in the instructions given in the present case

before and during discussion of the murder charge.

■ The other instructions complained of by Washington are more troublesome. The language of the manslaughter instruction, stating that "our law says a person intends ... the necessary and natural consequences of any act performed by him," seems to fall afoul of *Sandstrom*; the instruction on criminal weapons possession, which stated flatly that "a person intends ... the necessary and natural consequences of any act he performs," is equally impermissible. In the *Getch* opinion referred to above, the New York Court of Appeals also agreed that these instructions are erroneous. See *Getch*, supra, at 453–55, 429 N.Y.S.2d 579, 407 N.E.2d 425. If these were the only instructions given, then both *Sandstrom* and *Getch* would require Washington's release or retrial. But the crucial instructions respecting the murder charge were not constitutionally erroneous. The first incorrect charge related to manslaughter, which crime was never reached by the jury, since it convicted Washington on the murder charge. The second incorrect charge occurred in discussion of one of the criminal weapons possession charges, which the jury did reach and on which Washington was convicted and received a concurrent, and lesser, sentence. Thus, a question arises that has not been examined in this case by either the state courts or the federal district court: whether the later, constitutionally defective instructions on different counts spill over and infect the earlier ones on the murder charge. In deciding this issue, a court must consider that the trial judge's constitutionally erroneous instructions explicitly referred back to the earlier ones, thus arguably increasing the likelihood that those earlier instructions were infected. On the other hand, a court should also inquire into, among other things, whether Washington's intent was a serious issue at his trial. Mickens's wounds were extensive. Moreover, at trial Wash-

---

**3.** See *Getch*, supra, 50 N.Y.2d at 466, 429 N.Y.S.2d 579, 407 N.E.2d 425 (observing that New York State courts in the future "no doubt will avoid the use of phrases which could be construed or even misconstrued as shifting any part of the burden to the defendant").

ington relied solely on the defense of justification, which arguably presupposes that the act sought to be justified was otherwise culpable. Thus, an argument can be made that intent was, as appellant argues, "effectively conceded" by Washington, rendering harmless the error in jury instructions on that point.

Under the circumstances, we think that this question should be decided in the first instance by the state courts. The Supreme Court recently had occasion to examine a similar issue in *Mabry v. Klimas*, 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 897 (1980). In that case, defendant was convicted in a state court and subsequently challenged his sentence in a federal habeas petition. On federal appeal, the question arose whether an amended state "recidivist" statute enacted after defendant's sentencing should apply in his case. The Supreme Court noted that this question had never been presented to the state courts, and it concluded that, in the absence of any indication that state judicial remedies would be unavailable, the federal courts should give the state courts the initial opportunity to resolve the question. Id. at 2757, see 28 U.S.C. § 2254(b), (c).

We believe that *Klimas* indicates the correct disposition of the present action. While no amendment of state law occurred while Washington was pressing his habeas petition, the State's highest court during that time materially and definitively construed *Sandstrom's* effect on jury instructions in state criminal trials. We are aware that Washington attacked the jury instructions in the Appellate Division. But the definitive state court construction of *Sandstrom*, which agrees with our own, occurred thereafter. Under the circumstances, we think it appropriate that the state courts now be given the opportunity in the first instance to rule on the question of spillover effect.

### IV.

The foregoing disposes of the issues raised by the direct appeal. Washington has filed a cross-appeal from the order of the district court that denied his first habeas petition. First, he contends that the prosecutor's summation, which noted that Washington had consulted with his attorney before making the exculpatory statement upon which his defense at trial was founded, effectively deprived Washington of due process and his right to counsel. Second, Washington argues that the New York "justification" statute, N.Y. Penal Law § 35.15, which imposes upon the intended victim of a murder the duty to retreat, is unconstitutional, because it imposes no such duty on the intended victims of other violent crimes, thus denying the equal protection of the laws.

The district judge rejected both of these arguments in his opinion denying Washington's first habeas petition. As to the first, the judge concluded that while the prosecutor's statement was error, it was harmless beyond a reasonable doubt when considered in the totality of the circumstances. As to the second, the judge concluded that the New York "justification" statute does not make the distinction contended for by Washington, and so the issue of equal protection did not arise. We agree with the conclusions of the district judge regarding these points, substantially for the reasons given in his opinion. Accordingly, we find no merit in the cross-appeal.

The judgment of the district court, granting Washington's amended petition for a writ of habeas corpus, is therefore vacated. The action is remanded to the district court with directions to dismiss the petition without prejudice to refiling after Washington has exhausted any appropriate state remedy.