**Paul DUDLEY, Petitioner,**

v.

**Stephen DALSHEIM, Superintendent, Downstate Correctional Facility, and Hon. Robert Abrams, Attorney General, State of New York, Respondents.**

**81 Civ. 1087 (KTD).**

United States District Court, S. D. New York.

Oct. 2, 1981.

Paul Dudley, petitioner pro se.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for respondents, Mark Dwyer, Donna Krone, Asst. Dist. Attys., New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Petitioner Paul Dudley requests a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that his constitutional rights were violated at his trial for murder. Petitioner is presently incarcerated in a state prison and serving a sentence of fifteen years to life for the murder of one Marcus Brown.

At trial, the proof showed that Dudley shot the victim with a pistol on the evening of November 2, 1972 while the victim and two others were sitting on a stoop outside 102 W. 137th Street in Manhattan. The murder was reported to the police at 12:11 a. m. on November 3. The prosecution presented three witnesses who were purportedly present at the scene of the crime. The defendant asserted that he was in a bar at the time the murder occurred and produced two alibi witnesses—the defendant's fiancee and a friend. The defendant's fiancee, Barbara Allen, testified that the defendant left her apartment at 10:00 p. m. that evening and returned at 12:30 a. m. She also testified that she talked with Dudley over the telephone for ten minutes at about midnight. The friend testified that the defendant was with him at the Silver Rail Bar on 137th Street until 11:45 p. m. or midnight. At that time, the friend left the bar leaving Dudley behind. About twenty minutes later the friend went to Barbara Allen's apartment and Dudley was already there.

As part of the state's rebuttal case, Richard Schaeffer, an assistant district attorney, testified about a conversation he had with the defendant five days after the slaying which contradicted defendant's version of events at trial. Schaeffer testified that Dudley told him that he had been in the Bermuda Bar on 137th Street from 11:30 to 11:45 p. m. on the night of November 2, 1972. At 11:45 p. m. he went to the Silver Rail Bar to meet some friends. Dudley stayed there for about thirty minutes, leaving at about 12:15 a. m. He returned to the Bermuda Bar for five to seven minutes, and then met his father at 100 West 137th Street at 12:20 a. m. After having a drink with his father, Dudley went to Barbara Allen's apartment.

Petitioner was convicted of murder on September 20, 1974. In his appeal to the

# 90

Appellate Division, petitioner raised two claims: first, that the assistant district attorney's testimony about Dudley's alibi statement was hearsay, and second, that the trial court improperly denied without a hearing his motion to dismiss the indictment on grounds that he did not receive a speedy trial. On July 1, 1975, the Appellate Division affirmed the conviction without opinion. On November 8, 1979, petitioner filed an application for a writ of habeas corpus with the New York Supreme Court, Dutchess County. He argued that the court's instruction on intent and reasonable doubt were not proper. Dudley also argued that he was denied effective assistance of counsel in that no defense objections were raised to the trial court's charge, and because his appellate attorney did not submit an application for leave to appeal to the New York Court of Appeals. The Justice of that court treated this as a post-judgment motion to vacate the judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law. He then transferred the matter to New York County.

On September 17, 1980, the application was denied. His application for leave to appeal the denial of this motion was denied on December 30, 1980 by the Appellate Division, First Department.

Petitioner, contending he has exhausted all his state remedies, filed the instant petition on February 10, 1981, for a writ of habeas corpus in this Court. He alleges (i) that two portions of the trial court's charge denied him his right to a fair trial; (ii) that testimony about an alibi statement was improperly admitted into evidence; (iii) that the trial court improperly denied without a hearing his motion to dismiss the indictment on the ground that he had been denied a speedy trial; and (iv) that the assistance of both his trial and appellate counsel was ineffective.

At the outset, it should be noted that on each of the grounds advanced by petitioner there has been a failure to exhaust available state remedies. This is sufficient grounds in itself to deny this petition. *See*

28 U.S.C. § 2254(b). For the reasons that follow, however, this petition is also denied on grounds that imprisonment of petitioner does not violate federal or constitutional law.

## DISCUSSION

### 1. *The Trial Court's Charge*

█ Plaintiff asserts that his constitutional rights to due process were violated when the trial court charged the jury as follows: "The law says that a person is presumed to intend the natural and probable consequences of his act." Petitioner claims that this instruction on the intent element of the murder charge erroneously created a conclusive presumption of intent. If so, this error would shift the burden of proof to the defendant and abrogate the requirement that the prosecutor prove every element of an offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). It has been said that the fact that a defendant has to carry any burden of persuasion on an essential element of the offense is enough to offend due process. *Lopez v. Curry*, 454 F.Supp. 1200 (S.D.N.Y.), *aff'd*, 583 F.2d 1188 (2d Cir. 1978).

The Court in *Sandstrom v. Montana, supra*, found the presumptive language of a charge to be unconstitutional in that it could easily mislead a reasonable juror. Sandstrom's jurors were told that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It was clear to the Supreme Court that a reasonable juror could easily have viewed such an instruction as mandatory. 442 U.S. at 515, 99 S.Ct. at 2454. Thus, the Court reversed the conviction.

█ An erroneous instruction in a jury charge, however, does not deprive a criminal defendant of his constitutional rights *per se* if the charge is correct as a whole.

*Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The charge must be read in its overall context to see if a possible error which might shift the burden of proof to the defendant has been cured. Viewing the instructions as a whole in this case, there are many instructions which cure the alleged error and insure that the jury was not misled. *United States v. Robinson*, 545 F.2d 301, 306 fn. 7. (2d Cir. 1976). Part of the court's charge relevant to intent reads:

> Let me repeat that definition: "A person acts intentionally with respect to a result or to conduct described by a Statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."
>
> Intent is basically a subjective element. Intent is a mental operation that can be proved usually only by the facts and circumstances surrounding the acts and events leading up to and following those acts. It is the doing of an act deliberately or wilfully as distinguished from some mistake, an act of carelessness, an act of negligence, an accident. There must be a particular intent to do a particular thing
>
> \* \* \* \* \* \*
>
> As it is not possible to look into another person's mind to determine just what thoughts are there, the intent mentioned in the law is determined from all the facts and all the surrounding circumstances by what the person did and by what the person said or by a combination of what the person did and what the person said. Science has not reached that stage where a person's mind can be X-rayed in order to disclose what thoughts are running through his mind at any given time.
>
> On the question of intent, the law says that a person is presumed to intend the natural and probable consequences of his act. You will readily understand that the intention with which a person commits an act or a crime is seldom if ever put into words by him before the commission of the crime. Crimes are ordinarily secret and a person does not advertise before-

hand or say beforehand what he intends to do.

> So what the law says is that a person is presumed to intend that which he actually does.
>
> \* \* \* \* \* \*
>
> Applying the law to the credible and believable evidence in this case, if you find that the People have proved to your satisfaction beyond a reasonable doubt that this defendant, with intent to cause the death of Marcus Brown, did cause the death of Marcus Brown by shooting him with a gun, you would be justified in convicting the defendant of the crime of murder.
>
> On the other hand, if you find that the People have failed to convince you beyond a reasonable doubt that this defendant intended to kill Marcus Brown, then you must acquit the defendant of the crime of murder.

Trial Court's Charge at 704–07.

Here, the trial judge gave sufficient additional instructions on the issue of intent, thereby insuring that the jury understood that the government had to affirmatively prove this element of the crime of murder beyond a reasonable doubt.

■ Petitioner further asserts that the trial court's statement that "proof beyond a reasonable doubt" is equivalent to "proof to a moral certainty" denied him a fair trial. He contends that this instruction permitted the jury to convict him using a lesser standard than proof beyond a reasonable doubt. As the petitioner points out, the test "to a moral certainty" has been criticized by the courts to be a confusing form of words and not to be used as a substitute for reasoned thought. *See People v. Borrero*, 26 N.Y.2d 430, 311 N.Y.S.2d 475, 259 N.E.2d 902 (1970). Once again, however, one must read the entire charge to see if the substance of reasonable doubt was clearly and fairly conveyed to the jury. *See U. S. v. Magnano*, 543 F.2d 431 (2d Cir. 1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977).

It appears from a reading of the trial court's charge that this statement did not in any way diminish the state's burden of proof:

You must bear in mind that the word reasonable is to be considered and weighed by you as much as the word doubt; in otherwords, the law does not say that a person be acquitted on any kind of a doubt. A reasonable doubt is a doubt which may exist in a juror's mind as a result of his reasoning and judgment, based upon the evidence in the case or the absence of satisfactory evidence in the case. This rule of law does not say that the case against the defendant must be proved beyond every imaginable doubt or every conceivable doubt. A defendant's guilt, however, must be proved to a moral certainty. But, once again, not to a mathematical certainty, not to a scientific certainty, and, of course, the latter is hardly probable or possible.

The human mind can imagine or conceive of a doubt on almost every subject that may be brought up. A reasonable doubt is not an imaginary doubt. It is not an unsubstantial doubt. It is not a capricious doubt. It is not a whimsical doubt which could be seized upon by a juror to avoid performing a disagreeable duty. A reasonable doubt is a doubt based upon reason which arises out of the evidence in the case or the lack of satisfactory evidence in the case. It is not—I repeat—it is not a whim, it is not a surmise, it is not a guess, it is not an unreasonable doubt. A reasonable doubt is a doubt for which you can give a reason, and that reason must be founded on the evidence in the case or the lack of satisfactory evidence in the case.

If, after carefully considering the evidence as a result of reason and judgment and because of the evidence in this case or the lack of satisfactory evidence in this case, you entertain a reasonable doubt as to this defendant's guilt, you should give the defendant the benefit of that doubt and acquit him.

Now, the doctrine of reasonable doubt goes to the question not only of guilt upon the entire case but to every essential element necessary to constitute the crime charged in the indictment. And I will discuss the elements of the crime in just a minute or two. However, if the case is proved to your satisfaction beyond a reasonable doubt, which means established to a moral certainty, then you would be justified in finding defendant guilty of the crime or crimes so charged.

Trial Court's Charge at 695–97.

### 2. Effective Assistance of Counsel

■ The defense counsel at trial did not except to any portion of the court's instructions on "presumption of intent" and "moral certainty" so as to preserve the objections for appellate review. If a defendant in a state criminal proceeding fails to make a timely objection in conformity with state procedural law, and the claim is, as a result, not determined on its merits, the claim cannot subsequently be entertained in a federal habeas corpus proceedings. See Section 470.05(2) New York Criminal Procedure Law; 28 U.S.C. § 2254(b). "A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding." Wainwright v. Sykes, 433 U.S. 72, 88, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1976). Nevertheless, exceptions to this rule are made if the petitioner can show both cause for his procedural default and resulting prejudice if he is bound by the procedural default. Taylor v. Harris, 640 F.2d 1 (2d Cir. 1981).

■ Petitioner argues that such an exception should be made in this case because of his trial attorney's ineffectiveness in that he failed to object to the court's instructions at trial thereby rendering the trial a farce and mockery. Petitioner also criticizes his counsel during the appellate process for not raising the very issue of the court's charge on presumption of intent, reasonable doubt, and moral certainty. Petitioner claims that the cause for his failure to challenge the court's charge, either at trial or on direct review, was the ineffec-

tiveness of both trial and appellate counsel, and that the charge was indeed prejudicial to his case.

Nevertheless, petitioner concedes that his trial attorney had a great deal of experience in the criminal courts and had the authority to make tactical decisions during the trial. In the absence of exceptional circumstances, counsel's deliberate choice of strategy would amount to a waiver binding on petitioner, precluding him from a decision on the merits of his federal claim. *United States ex rel. Agron v. Herold*, 426 F.2d 125 (2d Cir. 1970). The courts have adhered to stringent standards for determining exceptional circumstances relevant to the ineffectiveness of counsel. "A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." *United States v. Wight* 176 F.2d 376 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). The circumstances surrounding the defense attorney's conduct at this trial were not of such a nature.

The trial attorney's appearance was not merely perfunctory. He moved to dismiss before trial on the grounds that petitioner had been denied a speedy trial. During the trial, he fully cross-examined all of the state's witnesses. He produced two alibi witnesses to testify for the defense. He moved at the end of the state's case to dismiss the indictment for failure to present a *prima facie* case. He also made numerous objections throughout the trial and he gave a thorough summation.

The petitioner has a singular objection to his counsel's conduct at trial, i. e., his failure to object to the court's charge on the presumption of intent and the court's use of the words "moral certainty." As has already been discussed, there is little merit in these objections given the over-all context of the charge. The trial attorney's decision not to object, therefore, was certainly not unreasonable. Appellate counsel, as well, made the decision not to raise on appeal any issue concerning possible errors in the court's charge. He may have done so either because he realized they had not been objected to at trial, and therefore not preserved for review as a matter of law, or because he reasonably believed there was nothing wrong with the charge.

In sum, petitioner's assertion of his lawyers' actions do not rise to the level of a constitutional deprivation of his right to effective assistance of counsel.

### 3. *Hearsay and Denial of Speedy Trial*

The appellate attorney did, however, present two other issues he believed were meritorious to the Appellate Division. These issues pertained to petitioner's pretrial alibi statement and his alleged denial of a speedy trial.

Petitioner claims that he was deprived of the right to a speedy trial in violation of the sixth amendment to the United States Constitution. The petitioner's trial began some twenty months after the date of his arraignment. Several days before trial, petitioner moved to dismiss the indictment on the ground that his right to a speedy trial had been violated. The motion, argued on the first day of trial, was denied without a hearing, because the defendant could not show any prejudice to himself beyond a mere lapse of time. The Supreme Court of the United States has devised a balancing test to assess whether a particular defendant has been deprived of his right to a speedy trial: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Applying these criteria, petitioner's claim fails.

Petitioner never objected to any adjournment or raised any speedy trial claim until his last minute pre-trial motion, more than twenty months after his arrest. The Court in *Barker* emphasized that failure to assert the right to a speedy trial mitigates against a finding that a defendant was denied a speedy trial. Also, there was no showing that defendant was prejudiced by the delay. In this case, the petitioner's defense at trial was an alibi. The two alibi witnesses who

testified for him specifically recalled the time and circumstances surrounding the crime. Furthermore, although petitioner was incarcerated from the date of his arrest, once he was convicted he was given credit on his sentence for the time already served. The prejudice to him due to the delay would therefore appear to be minimal.

■ The second issue presented by the appellate attorney was the alleged inadmissibility of petitioner's alibi statement. At trial, the testimony of the two alibi witnesses conflicted with a legally obtained pre-trial statement that petitioner had made to an assistant district attorney. The assistant district attorney was called to testify by the state as a rebuttal witness and testified about the petitioner's alibi statement. Petitioner contends that the testimony was inadmissible hearsay which should not have been permitted.

Whether or not the introduction of this testimony was inadmissible as hearsay, or admissible as the petitioner's own out-of-court admission, is a question beyond the scope of the federal habeas corpus claim. Petitioner did not allege that this error violated any of his federal constitutional rights on the state level, nor has he attacked this evidence on constitutional grounds. Since habeas corpus is not available as a method of reviewing errors of State law, this Court need not decide this issue. *See Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Johnson v. Metz*, 609 F.2d 1052, 1054 (2d Cir. 1979).

Since petitioner's assertions concerning the court's charge, the ineffective assistance of counsel, and lack of a speedy trial do not meet the standards which demonstrate an infringement of specific Constitutional rights, the petition for habeas corpus must be denied.

SO ORDERED.