Edwin RIVERA, Petitioner,

v.

Phillip COOMBE, Jr., Superintendent, Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.

Pedro ARROYO, Petitioner,

v.

Everett JONES, Superintendent, Great Meadow Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.

Nos. 80 Civ. 7447 (RJW), 81 Civ. 1280 (RJW).

United States District Court,
S. D. New York.

Feb. 11, 1982.

The Legal Aid Society, New York City, for petitioners in Nos. 80 Civ. 7447(RJW) and 81 Civ. 1280(RJW); William E. Hellerstein, John D. Lewis, Judith L. Turnock, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for respondents in No. 80 Civ. 7447(RJW); Daniel Kinburn, Deputy Asst. Atty. Gen., New York City, of counsel.

Robert M. Morgenthau, Dist. Atty. of New York County, New York City, for respondents in No. 81 Civ. 1280(RJW); Mark Dwyer, Victoria Lea Smith, Asst. Dist. Attys., New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

The two above-captioned actions were each commenced by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner in 80 Civ. 7447(RJW) (hereinafter referred to as "the *Rivera* action") is Edwin Rivera, presently in the custody of the Attorney General of the State of New York at Eastern Correctional Facility in Napanoch, New York. Petitioner in 81 Civ. 1280(RJW) (hereinafter referred to as "the *Arroyo* action") is Pedro Arroyo, presently in the custody of the Attorney General of the State of New York at Great Meadow Correctional Facility in Comstock, New York. Respondents in the *Rivera* action are Phillip Coombe, Jr., Superintendent of the Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York. Respondents in the *Arroyo* action are Everett Jones, Superintendent of the Great Meadow Correctional Facility, and Robert Abrams, Attorney General of the State of New York. The Court hereinafter refers to all three respondents individually and jointly as "the State." Because the *Rivera* action and the *Arroyo* action present very similar factual and legal issues, the Court has determined to deal with both petitions by a single opinion. For the reasons hereinafter stated, both petitions are granted.

## BACKGROUND

The procedural histories of the *Rivera* action and the *Arroyo* action may be stated in fairly brief fashion. On September 12, 1975, Rivera was convicted, following a jury trial in the Supreme Court of the State of New York, Bronx County, of manslaughter in the first degree, *see* N.Y.Penal Law § 125.20, and criminal possession of a weapon, *see* N.Y.Penal Law § 265.01(2). Rivera was sentenced to a prison term on the first-degree manslaughter count of from seven to twenty-one years and was unconditionally discharged on the other count. On October 3, 1977, Rivera's manslaughter conviction was affirmed without opinion by the Supreme Court of the State of New York, Appellate Division, First Department. *People v. Rivera*, 59 A.D.2d 829, 398 N.Y.S.2d 351 (1st Dep't 1977). The New York Court of Appeals denied Rivera leave to appeal to that court on November 21, 1977. *People v. Rivera*, 43 N.Y.2d 799, 402 N.Y.S.2d 1037, 373 N.E.2d 299 (1977). Subsequently, on November 28, 1979, the judge who presided at Rivera's state trial denied Rivera's motion, pursuant to N.Y.Crim.Proc. Law § 440.10, to vacate the judgment of conviction for first-degree manslaughter. On February 5, 1980, the Appellate Division denied Rivera leave to appeal the trial judge's denial of this motion. The petition for a writ of habeas corpus that is the subject of today's decision was filed in this Court on December 31, 1980.

Turning to the *Arroyo* action, Arroyo was convicted on April 12, 1973, after a jury trial in the Supreme Court of the State of New York, New York County, of attempted murder in the first degree, *see* former N.Y. Penal Law § 125.30, and four lesser-included counts. Arroyo was sentenced to a prison term on the attempted murder count of from fifteen years to life. He received a sentence of up to seven years in prison on each of the other four counts. These sentences were made concurrent to one another and to the sentence imposed on the attempted murder count. On April 14, 1977, the Supreme Court of the State of New York, Appellate Division, First Department, affirmed Arroyo's conviction for attempted murder, and reversed the conviction on the other four counts on the ground that the counts should have been dismissed upon Arroyo's conviction of the greater-inclusive count of attempted murder. *People v. Ar-*

*royo*, 57 A.D.2d 523, 393 N.Y.S.2d 570 (1st Dep't 1977). The New York Court of Appeals denied Arroyo leave to appeal to that court on May 12, 1977. *People v. Arroyo*, 42 N.Y.2d 826, 396 N.Y.S.2d 1029, 364 N.E.2d 1347 (1977). Subsequently, on May 19, 1980, the judge who presided at Arroyo's state trial denied Arroyo's motion, pursuant to N.Y.Crim.Proc. Law § 440.10, for an order vacating the judgment of conviction for attempted murder. On September 18, 1980, the Appellate Division denied Arroyo leave to appeal the state trial judge's denial of this motion. The petition for a writ of habeas corpus that is the subject of today's decision was filed in this Court on March 15, 1981.

The petitions filed in the *Rivera* action and the *Arroyo* action each challenge the constitutionality of the state trial judge's jury charge on the subject of intent. Specifically, Rivera objects to the judge's instruction that "[a] person is presumed to intend the natural and probable consequences of his act"; Arroyo challenges the judge's instruction that "people are presumed to intend the natural, probable and logical consequence of their acts." The two petitioners argue, on the basis of these essentially identical instructions, that the juries at their trials could well have understood New York law to permit the prosecution to use a constitutionally impermissible method to establish beyond a reasonable doubt the intent necessary to commit the crimes of which they presently stand convicted. Rivera contends that the trial judge's alleged constitutional error requires that he be given a new trial on the first-degree manslaughter count of which he was convicted; Arroyo contends that the trial judge's alleged constitutional error requires that he be given a new trial on the attempted murder count of which he was convicted.

Analysis of the respective contentions of Rivera and Arroyo requires a fairly detailed recapitulation of their state trials insofar as these trials concerned the issue of intent. The first-degree manslaughter charge against Rivera involved the stabbing death of one Guy Keyes. Keyes died of a knife wound in the back that he apparently received during an altercation on 174th Street in the Bronx. At his trial, Rivera admitted that he, along with a number of other individuals, had participated in an argument with Keyes. He further admitted that he had been among a crowd of people that chased Keyes down 174th Street. However, Rivera denied that he had pursued Keyes with the intent of stabbing him, Transcript at 624, and denied that he had stabbed Keyes, Transcript at 596–97.

The state trial judge charged the jury on second-degree murder, first-degree manslaughter, and criminal possession of a weapon. In so doing, (1) he told the jury that the prosecution had the burden of proving beyond a reasonable doubt all the elements of each crime with which Rivera was charged, Transcript at 820–21, 828, 830–31, (2) he instructed the jury that an essential element of the crime of second-degree murder is "that the defendant formed the *intent* to kill the deceased herein," Transcript 821 (emphasis supplied), and (3) he further instructed the jury that an essential element of first-degree manslaughter is "that the defendant had an *intent* to cause Guy Keyes, Junior, serious physical injury," Transcript at 828 (emphasis supplied). In defining the word "intent," as he used it in the latter two instructions, the state trial judge made the following statement:

I shall now define intent for you. *A person is presumed to intend the natural and probable consequences of his act.* Criminal intent is an intent to do knowingly and wilfully that which is condemned as wrong by the law. A criminal intent may be inferred from all the circumstances of the case. It need not be established by direct proof. To constitute the crime there must not only be the act but also the criminal intent and these must occur, the latter being equally essential with the former. The existence of criminal intent constitutes a question of fact for determination by you and the burden of showing intent, the intent with which a crime has been committed rests upon the prosecution to establish it by

evidence beyond a reasonable doubt. So where the law requires that the People must establish a specific or certain intent on the part of one charged with the commission of a crime, the law does not expect or require for obvious reasons that intent must be proved by directed [sic] proof to an absolute certainty or with mathematical precision. Intent, I mean criminal intent, is always an essential element to the commission of the crime such as we have here and it may be proved by direct evidence or it may be proved from circumstances surrounding the transaction or the act itself, or it may be proved by a combination of both. What is intent? Intent is a frame of mind of the perpetrator of the act at the time he commits it. You must probe the mind. You may say to yourself how are we to determine what a man's intentions are. Well members of the jury, we can only determine that by his acts, by his conduct, by what he says and by what he does. You should consider what he allegedly did, what means he allegedly employed, the type of instrument allegedly used, if any, the part of the body allegedly attacked, and all the circumstances. And from these surrounding circumstances you are to determine the intention of the defendant at the time.

Under our law every person is presumed to intend the natural and inevitable consequences of his own voluntary acts and unless such acts were done under circumstances which would preclude the existence of such intent, the jury has a right to infer from the results produced, the intention to effect such result. The intent formed, is a secret and silent operation of the mind and its physical manifestations, the accomplishment of the thing determined upon. The individual whose intent is sought to be ascertained may remain silent of [sic] if he speaks, may probably will if he has a crime to hide, speak untruthfully, and thus the mind is compelled from necessity to refer to the act and the physical manifestations of the intent exhibited by the results produced as the safest if not the only

proof of the fact to be ascertained. A person acts intentionally with respect to or result to conduct [sic] described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.

Transcript at 821–24 (emphasis supplied).

Turning to the *Arroyo* action, the attempted murder charge against Arroyo concerned a gunshot wound received by one Raymond Bernard, a member of the New York City Police Department. Bernard was wounded while attempting to stop a burglary that was in progress at a music store on Third Avenue in Manhattan. At his trial, Arroyo admitted that he had been in the vicinity of the music store on the day in question and that he had taken a gun from one of the police officers who accosted him on that day. However, he testified that he had no recollection of ever firing that gun. Transcript at 630. Sue Lydia Pratts, a witness to the shooting, testified that Arroyo never had a gun at all and that all of the shooting was done by police officers. Transcript at 597–98.

The state trial judge charged the jury on attempted murder and four lesser-included counts. In so doing, she told the jury that the prosecution had the burden of proving beyond a reasonable doubt all the elements of any crime with which Arroyo was charged, Transcript at 762, and she instructed the jury that an essential element of the crime of attempted murder is that "the defendant . . . [acted] with *intent* to cause the death of Raymond Bernard," Transcript at 759 (emphasis supplied). In defining the word intent, as she used it in this instruction, the state trial judge made the following statements:

What is intent; under our law a person acts intentionally with respect to attempting to cause the death of another person when the alleged perpetrator's conscious objective is to cause such death. . . . [O]f course, we all recognize that an intention is a subjective matter and it depends on the operation of an individual's mind none the less it is possible to make a finding of intention based

on objective actions of the alleged perpetrator; in fact, this is the only method that we can use in determining intention since we cannot get into the mind of the alleged perpetrator. Therefore, in your deliberation, you may use the defendant's objective action as a determining factor in deciding whether or not he acted intentionally.

You may also refer to all the other evidence which may indicate intent or not indicate intent. The Penal Law of the State of New York defines intentionally as follows: a person acts intentionally with respect to a result or conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. . . .

. . . .

. . . What is intent, again I will define intent and intentionally to you, the Penal Law of the State of New York that a person acts intentionally with respect to a result or conduct described by a statute defining an offense when his conscious objective is to cause the result or engage in a conduct [sic].

. . . .

. . . I have described intent and intentionally for you and defined them under our Penal Law, again, I repeat, a person acts intentionally with respect to a result or the conduct described by the law defining an offense when his conscious objective is to cause a result or engage in the conduct . . . . The law recognizes that intent is the subjective matter therefore, it allows you to base your finding of intention on any objective evidence, the defendant's action or any other evidence in the case which may indicate what his intention was.

Transcript at 760–61, 765, 767. Six and one-half hours after the jury began deliberations on the case, it sent a note to the judge stating that agreement had been reached on four of the five counts and requesting additional instructions on the meaning of the word "intent." Transcript at 808. The parties agree that the attempt-

ed murder count was the one count that remained to be resolved. In response to the request for further instructions, the judge made the following statement:

Now, Members of the Jury, a person acts intentionally with respect to attempting to cause death or injury to another person, when the alleged perpetrator's conscious objective is to cause such death or injury.

Intention is a subjective thing and depends on the operation of the individual's mind, nonetheless, it is possible to make a finding of intention based on the objective actions of the individual.

The Penal Law defines intentionally as follows: a person acts intentionally with respect to a result or conduct described by a statute to finding [sic] an offense when his conscious objective is to cause such result or to engage in such conduct.

By agreement, I can tell you that *people are presumed to intend the natural, probable and logical consequence of their acts.*

Transcript at 810 (emphasis supplied). The jury thereupon resumed deliberations. According to the minutes of the trial kept by the court clerk, the jury's verdict of guilty on all counts was received approximately twenty-five minutes later.

## DISCUSSION

As noted, each petitioner in these two actions contends that his right to a fair trial was violated by an instruction given at his trial on the subject of intent. Specifically, Rivera contends that his conviction of first-degree manslaughter was rendered constitutionally infirm by the trial judge's statement that "[a] person is presumed to intend the natural and probable consequences of his act." Arroyo argues that his conviction of attempted murder was similarly tainted by the trial judge's statement that "people are presumed to intend the natural, probable and logical consequence of their acts."

The Court begins its analysis of the merits of the petitions filed in the *Rivera* action and the *Arroyo* action by observing that the State, in opposing these petitions, does not

argue that Rivera or Arroyo has either (1) failed to exhaust state remedies with respect to his constitutional claim, *see* 28 U.S.C. § 2254(b), or (2) forfeited his constitutional claim, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[1] Rather, with respect to each petition, the State confines its opposition to arguing (1) that the instructions given by the state trial judge were not constitutionally impermissible and (2) that any constitutional error that did occur was harmless and hence cannot form the basis for this Court to grant a petition for a writ of habeas corpus. The Court deals with these two arguments in turn.

## I

The basic constitutional question raised in both the *Rivera* action and the *Arroyo* action is whether a reasonable jury could have, on the basis of the trial judge's instructions on intent, employed a constitutionally impermissible "evidentiary device" to find beyond a reasonable doubt that the petitioner acted with the intent required to commit the crime of which he stands convicted. Analysis of this question requires the Court to begin by examining the constitutional limitations on the use in the criminal context of two distinct sorts of evidentiary devices, which devices the Court herein calls "mandatory presumptions" and "permissive inferences." Then, having explained the extent to which these two types of evidentiary devices are unconstitutional if employed in the criminal context, the Court considers whether the jury at either Rivera's or Arroyo's trial could reasonably have understood the judge's charge on intent as instructing the jury to employ a constitutionally impermissible mandatory presumption or permissive inference as a means of finding beyond a reasonable doubt the intent necessary to commit the crime in question.

## A

The Court begins its discussion of mandatory presumptions and permissive inferences by defining those terms. Mandatory presumptions are evidentiary devices that *require* the trier of fact, upon finding one fact ("the underlying fact") to have been established, to find the existence of a second fact ("the presumed fact"). There are two types of mandatory presumptions. "Conclusive" mandatory presumptions leave the trier of fact with no alternative to finding the presumed fact upon finding the underlying fact. "Rebuttable" mandatory presumptions require the trier of fact to

1. Both Rivera and Arroyo clearly exhausted their state remedies by raising the constitutional claim in a motion pursuant to N.Y.Crim. Proc. Law § 440.10 and seeking all available appellate review of the denial of that motion. As regards *Wainwright v. Sykes*, it is well settled in this Circuit that the cause-and-prejudice test set forth in that case is only triggered if the state courts have previously invoked a procedural rule to bar the petitioner's constitutional claim. *Klein v. Harris*, 667 F.2d 274, 284 (2d Cir. 1981). Since the State did not argue any procedural ground when Rivera raised his instant constitutional claim on direct appeal, *see* Respondent's Brief at 21–23, and since the judge who ruled on Rivera's motion under N.Y.Crim.Proc. Law § 440.10 did not rely on any procedural ground, but reached the merits of Rivera's claim, there can be no argument that any state court has ever refused to hear Rivera's constitutional claim for procedural reasons. Thus, *Wainwright v. Sykes* is irrelevant to the *Rivera* action. The State, in its brief opposing Arroyo's petition, does make an oblique argument that *Wainwright v. Sykes* is somehow relevant to the *Arroyo* action. The Court observes, however, that the Appellate Division, in ruling on Arroyo's constitutional claim in the context of his direct appeal, found it "without merit," 57 A.D.2d at 523, 393 N.Y. S.2d at 570, and that the judge who presided at Arroyo's trial expressly held, in ruling on Arroyo's motion under N.Y.Crim.Proc. Law § 440.10 to vacate his conviction, that the failure of Arroyo's trial counsel to object to the instruction that Arroyo now challenges did not constitute a "procedural default" under New York law. At oral argument of Arroyo's petition, the State conceded to the Court that this ruling by the state court makes *Wainwright v. Sykes* irrelevant to the Court's adjudication of Arroyo's petition, notwithstanding the fact that subsequent New York state court decisions have found similar failures to make trial objections to be procedural defaults, because there can be no argument that any state court has ever invoked a procedural rule to preclude reaching the merits of Arroyo's constitutional claim.

find the presumed fact upon finding the underlying fact unless other evidence probative of the presumed fact negates the existence of the presumed fact. In contrast to mandatory presumptions, permissive inferences are evidentiary devices that *permit,* but do not require, the trier of fact to find the existence of a fact ("the inferred fact") upon finding that the underlying fact has been established.

■ The constitutional limitations on the use of mandatory presumptions and permissive inferences in the criminal context derive from the rule, first enunciated in *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), that a state criminal defendant may not, consistent with the due process clause of the fourteenth amendment, be convicted of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime. Under this principle, a defendant's constitutional rights are violated if state law creates an evidentiary device that, either by removing a question of fact from the jury's consideration, *see United States v. United States Gypsum Co.,* 438 U.S. 422, 446, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978), or by shifting to the defendant the burden of persuasion on a question of fact, *see Mullaney v. Wilbur,* 421 U.S. 684, 703–04, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975), relieves the prosecution of its burden of proving beyond a reasonable doubt a particular fact necessary to constitute the crime with which the defendant is charged. Since conclusive mandatory presumptions

have precisely the issue-precluding effect condemned in *United States Gypsum,* and since rebuttable mandatory presumptions have precisely the burden-shifting effect condemned in *Mullaney,* mandatory presumptions, whether of the conclusive or rebuttable variety, are always unconstitutional when used in the criminal context to prove an element of the crime in question. *See Sandstrom v. Montana,* 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–2459, 61 L.Ed.2d 39 (1979). However, since a permissive inference expressly leaves the trier of fact free to employ or to disregard the evidentiary device, permissive inferences are unconstitutional only where there is no rational way the trier of fact, absent the legal authorization to do so supplied by the permissive inference, could find the existence of the inferred fact upon having found the existence of the underlying fact. *County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979).[2]

■ The foregoing principles determine the constitutionality of state laws that either require or allow the trier of fact, upon finding that a criminal defendant performed an act, to find that the defendant intended for his act to have one of its natural and probable consequences. State laws are unconstitutional where they *require* the trier of fact, having found that the defendant performed an act, to find that the defendant intended for that act to have one of its natural and probable consequences. *Sandstrom v. Montana, supra,* 442 U.S. at 521–23, 99 S.Ct. at 2457–2459. A

2. Prior to the Supreme Court's decision in *County Court v. Allen,* there was considerable doubt concerning the proper standard for determining the constitutionality of a permissive inference when used in the criminal context. Some Supreme Court decisions indicated, as the Supreme Court ultimately held in *County Court v. Allen,* that a criminal permissive inference passes constitutional muster as long as a rational connection exists between the underlying fact and the inferred fact. *See, e.g., Tot v. United States,* 319 U.S. 463, 467–68, 63 S.Ct. 1241, 1244–1245, 87 L.Ed. 1519 (1943). Other decisions intimated that a permissive inference can withstand constitutional scrutiny when used in the criminal context only if demonstration of the underlying fact makes the existence

of the inferred fact "more likely than not." *See, e.g., Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). Still other decisions suggested that the correct test for the constitutionality of a criminal permissive inference is whether demonstration of the underlying fact makes existence of the inferred fact likely beyond a reasonable doubt. *See, e.g., Turner v. United States,* 396 U.S. 398, 405–18, 90 S.Ct. 642, 646–653, 24 L.Ed.2d 610 (1970). *See generally Barnes v. United States,* 412 U.S. 837, 841–46, 93 S.Ct. 2357, 2360–2363, 37 L.Ed.2d 380 (1973); Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity,* 92 Harv.L.Rev. 1187, 1199–1208 (1979).

state law creating such a mandatory presumption is not saved from constitutional infirmity if the trier of fact is relieved from the requirement of finding the presumed fact (that is, from finding that the defendant intended for his act to have one of its natural and probable consequences) in cases where the existence of the presumed fact is negated by other evidence probative of the presumed fact; this merely converts the mandatory presumption from the conclusive variety into the rebuttable variety. *Id.* at 524, 99 S.Ct. at 2459. On the other hand, state laws are not unconstitutional where they merely *permit* the trier of fact, having found that the defendant performed an act, to find that the defendant intended for that act to have one of its natural and probable consequences. *See Washington v. Harris*, 650 F.2d 447, 453 (2d Cir. 1981). Such a law, which merely creates a permissive inference, withstands constitutional scrutiny because there is a rational connection between the underlying fact (the defendant's act) and the inferred fact (the defendant's intent that the act would cause one of its natural and probable consequences). *County Court v. Allen, supra*, 442 U.S. at 157, 99 S.Ct. at 2224.

New York law does, and did at the time of both Rivera's and Arroyo's trials, authorize the trier of fact in a criminal trial to use a constitutionally proper permissive inference such as the Court has just described in order to find that the defendant acted with the requisite criminal intent. *People v. Getch*, 50 N.Y.2d 456, 465–66, 429 N.Y. S.2d 579, 583–84, 407 N.E.2d 425, 429 (1980). However, the trier of fact in a criminal trial is not, under New York law, and was not at the time of either Rivera's or Arroyo's trial, authorized to find the defendant's intent by using a constitutionally impermissible mandatory presumption such as the Court described above. *People v. Thomas*, 50 N.Y.2d 467, 472–73, 429 N.Y.S.2d 584, 587, 407 N.E.2d 430, 433 (1980). In sum, New York law is, and has been at all times relevant to the *Rivera* action and the *Arroyo* action, in accord with the constitutional limitations on the use of evidentiary devices such as mandatory presumptions and permissive inferences in order to find criminal intent.

Rivera and Arroyo do not challenge this view of New York law. Rather, their petitions argue that, notwithstanding the prevailing rule of New York law, the judges at their state trials each charged the jury on New York law in a manner at variance with the federal constitutional limitations on the use of a mandatory presumption as a means of finding criminal intent. The Court, having laid a foundation for doing so by explaining the constitutional limitations on the use of such mandatory presumptions, may now proceed to discuss whether the jury charge given at either Rivera's or Arroyo's trial exceeded these limitations.

## B

The standard that this Court must apply in evaluating the constitutional sufficiency of the jury charges given at Rivera's and Arroyo's state trials is whether, considering the charge as a whole, a reasonable jury could have interpreted the judge's charge in a fashion inconsistent with the Constitution. *Sandstrom v. Montana, supra*, 442 U.S. at 514, 99 S.Ct. at 2454. A charge susceptible of such an interpretation by a reasonable jury so infects the trial of which it is a part that a conviction rendered subsequent to the charge cannot withstand due process attack, *see Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), even if the charge was also capable of being understood by a reasonable jury in a manner that comports with the Constitution, *see Leary v. United States, supra* note 2, 395 U.S. at 31–32, 89 S.Ct. at 1545–1546. Judgments of conviction must occasionally be vacated or reversed on this theory where the charge contained only one erroneous instruction. *See, e.g., Cool v. United States*, 409 U.S. 100, 102–03, 93 S.Ct. 354, 356–357, 34 L.Ed.2d 335 (1972). However, a judgment of conviction will not be rendered constitutionally infirm by one deficient instruction if the charge, when considered as a whole, clearly informs the jury of the correct legal principle. *Henderson v. Kibbe*, 431 U.S. 145, 153, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203

(1977); *see Cupp v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. at 400. That is, where there is "no possibility," given the judge's additional instructions, that a reasonable jury could have interpreted the charge as a whole to state a rule of law at odds with the Constitution, a single ailing instruction does not render the charge constitutionally deficient. *Nelson v. Scully,* 672 F.2d 266, 272 (2d Cir. 1982); *see United States v. Robinson,* 545 F.2d 301, 306 n.7 (2d Cir. 1976) (no error if trial judge's charge included additional instructions that "insur[ed]" jury understood correct rule).

■■■ The Court first applies these principles to the charge given by the judge at Rivera's trial. In discussing the crime of first-degree manslaughter, the judge at Rivera's trial correctly told the jury that it could only find Rivera guilty of that crime if it found beyond a reasonable doubt that Rivera intended to cause Guy Keyes serious physical injury. However, at the outset of his general charge on intent, the judge instructed the jury that "[a] person is presumed to intend the natural and probable consequences of his act." None of the judge's later instructions expressly qualified the first instruction's clear implication that, once the jury found that serious physical injury to Guy Keyes was a natural and probable consequence of an act performed by Rivera, the jury was then *required* to find that Rivera had the requisite intent to cause Guy Keyes serious physical injury. Thus, this instruction is perfectly consistent with, and reasonably could have been understood by the jury to describe, a constitutionally impermissible conclusive mandatory presumption. *Accord, Washington v. Harris, supra,* 650 F.2d at 453 (judge's instruction that "a person intends ... the necessary and natural consequences of any act he performs" was "constitutionally defective"); *cf. United States ex rel. Eccleston v. Henderson,* 534 F.Supp. 813, 816–17 (E.D. N.Y.1981) (no error where trial judge, after instructing jury that "under our law a person is presumed to intend the natural and probable consequences of his acts," explained that "this presumption, like all presumptions, may be accepted or

rejected by you"). Under the previously stated principles, the judge's charge was rendered constitutionally infirm by this mandatory presumption instruction unless the charge, when considered in its entirety, clearly informed the jury of the correct rule of law, that is, unless the charge clearly informed the jury, contrary to the particular instruction relied on by Rivera, that New York law *permitted,* but did not *require,* the jury to find the requisite intent to cause Guy Keyes serious physical injury if it first found that serious physical injury was a natural and probable consequence of an act performed by Rivera. *But see United States v. Winter,* 663 F.2d 1120, 1144 (1st Cir. 1981) (judge's charge is *always* constitutionally erroneous when it includes a mandatory presumption instruction like that given at Rivera's trial).

The Court begins its analysis of this question by making two observations. First, once a judge gives a single instruction on intent that the jury could reasonably understand to state a constitutionally invalid rule of law, the charge as a whole cannot possibly clearly inform the jury of the correct rule of law, no matter how many accurate instructions on intent the judge previously gave or subsequently gives, unless a reasonable jury would necessarily understand the other instructions to be at odds with the incorrect understanding that the jury reasonably could obtain from the ailing instruction. *See Callahan v. LeFevre,* 605 F.2d 70, 75 (2d Cir. 1979). That is, where the trial judge gives an instruction that is reasonably susceptible of a constitutionally invalid interpretation, and there is no necessary rhetorical inconsistency between such an interpretation of this instruction and the remainder of the judge's charge, it is plain that there is no ground for a court to hold that the charge as a whole clearly informed the jury of the correct rule of law. *Sandstrom v. Montana, supra,* 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456–2457 n.7; *see, e.g., Getch v. Hammock,* No. CV–80–3363, slip op. at 20–22 (E.D.N.Y. Mar. 3, 1981) (finding that charge as a whole did not clearly inform jury of correct rule of law because

charge's permissive language was not necessarily rhetorically inconsistent with the constitutionally invalid interpretation jury reasonably could have given charge's mandatory language), *rev'd on other grounds mem.*, 672 F.2d 900 (2d Cir. 1981) (no constitutional error because judge's charge contained no mandatory language). Second, even if the court is able to identify such a necessary rhetorical inconsistency, it may only declare that the charge as a whole clearly informed the jury of the correct legal rule if the circumstances of the case are such that the jury must have resolved this inconsistency by rejecting the constitutionally invalid interpretation of the ailing instruction. *Sandstrom v. Montana, supra,* 442 U.S. at 525–26, 99 S.Ct. at 2459–2460; *see, e.g., Matarese v. Le-Fevre*, 514 F.Supp. 128, 132 (E.D.N.Y.1981) (holding, upon identifying necessary rhetorical inconsistency within charge, that "a reasonable juror could not interpret the [charge] as describing anything other than a permissive inference").

The State, in arguing that the charge as a whole clearly informed the jury at Rivera's trial of the correct rule of law, relies primarily on that part of the judge's general charge on intent where he instructed the jury that "[a] criminal intent may be inferred from all the circumstances of the case." The judge explained this instruction as follows: "You should consider what [the defendant] allegedly did, what means he allegedly employed, the type of instrument allegedly used, if any, the part of the body allegedly attacked, and all the circumstances. And from these surrounding circumstances you are to determine the intention of the defendant at the time." The State argues, and the Court agrees, that the jury reasonably could have understood this part of the judge's charge to entitle it to use a permissive inference in order to find that Rivera had the intent necessary to commit first-degree manslaughter. However, the Court does not find that this permissive inference instruction was necessarily rhetorically inconsistent with a constitutionally invalid interpretation of the judge's earlier conclusive mandatory presumption instruc-

tion. Given that the judge's permissive inference instruction did not contain the "natural and probable consequences" limitation contained in the mandatory presumption instruction, the jury could reasonably have put the two instructions together and concluded that it was (1) required to find the requisite intent if it found that serious physical injury to Guy Keyes was one of the natural and probable consequences of an act performed by Rivera, and (2) permitted to find the requisite intent, regardless of whether serious physical injury to Guy Keyes was one of the natural and probable consequences of an act performed by Rivera, by reference to all the facts and circumstances of the case. In other words, the jury reasonably could have understood the permissive inference instruction to offer it a route to finding the requisite intent that was merely *alternative* to, and hence was perfectly compatible with, the constitutionally deficient route made available by the conclusive mandatory presumption instruction. Thus, the permissive inference instruction did not necessarily prevent the jury from relying on a constitutionally infirm interpretation of the conclusive mandatory presumption instruction to find that Rivera acted with the requisite intent. *See Sandstrom v. Montana, supra* (finding constitutional violation notwithstanding fact that charge, in addition to telling jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," instructed jury (*see* Petitioner's Appendix at 36) that "[p]urpose and knowledge are manifested by the circumstances connected with the offense ... [and] need not be proved by direct evidence, but may be inferred from acts, conduct, and circumstances appearing in evidence").

The State also argues that the judge eliminated any possibility that the jury would understand his charge to describe a constitutionally deficient mandatory presumption when, near the end of his general charge on intent, he instructed the jury that "[u]nder our law every person is presumed to intend the natural and inevitable consequences of his own voluntary acts and

unless such acts were done under circumstances which would preclude the existence of such intent, the jury has a right to infer from the result produced, the intention to effect such result." This argument fails for two reasons. *First*, the jury reasonably could have interpreted this instruction as two separate instructions, the first of which (*i.e.*, "[u]nder our law every person is presumed to intend the natural and inevitable consequences of his own voluntary acts") reiterated the earlier constitutionally infirm conclusive mandatory presumption instruction, and the second of which (*i.e.*, "and unless such acts were done under circumstances which would preclude the existence of such intent, the jury has a right to infer from the results produced, the intention to effect such result") reiterated the earlier constitutionally sound permissive inference instruction. Read in this fashion, this instruction, like the permissive inference instruction, is not rhetorically inconsistent with a constitutionally invalid interpretation of the conclusive mandatory presumption instruction. *Second*, the jury reasonably could have read this instruction as a single instruction, and concluded that it described a constitutionally impermissible rebuttable mandatory presumption. That is, the jury reasonably could have thought that, if it found that a natural and probable consequence of an act performed by Rivera was serious physical injury to Guy Keyes, this instruction *required* the jury to find that Rivera intended for this consequence to occur, unless other evidence probative of Rivera's intent negated such a finding.[3] If read as a single instruction, then, this instruction invited the jury to employ an unconstitutional means of finding the requisite intent, and therefore can hardly be said to have eliminated the possibility that the jury would behave in such a fashion.[4]

3. The Court recognizes that, if the jury did understand this instruction as a single instruction, it reasonably could have interpreted it to describe a permissive inference; further, since this instruction *does* contain a "natural and probable consequences" limitation, such an interpretation would have been rhetorically inconsistent with a constitutionally invalid interpretation of the earlier conclusive mandatory presumption instruction. The important point is that the jury did not *necessarily* follow this course. Rather, as described in text, the jury had two other reasonable courses available to it that each led to a constitutionally impermissible result: (1) the jury reasonably could have interpreted this instruction as two separate instructions, the first of which reiterated the judge's earlier constitutionally infirm conclusive mandatory presumption instruction and the second of which reiterated his earlier constitutionally sound permissive inference instruction; or (2) the jury reasonably could have interpreted this instruction as a single instruction, but understood it to describe a constitutionally impermissible rebuttable mandatory presumption. Also, the Court observes that the jury could reasonably have concluded (as, incidentally, the Court has after reading it repeatedly) that this instruction is not susceptible of *any* coherent interpretation. If the jury indeed reached such a conclusion, this instruction certainly did not eliminate the possibility that the jury relied on a constitutionally infirm interpretation of the judge's earlier conclusive mandatory presumption instruction to find that Rivera acted with the requisite intent.

4. The foregoing discussion demonstrates the fundamental differences between the charge given at Rivera's trial and the instruction that was at issue in *Washington v. Harris, supra.* As described in text, the *Rivera* action involves one instruction that reasonably could have been understood to describe a constitutionally impermissible conclusive mandatory presumption, and a second instruction that, because it began with mandatory language ("[u]nder our law every person is presumed") and ended with permissive language ("the jury has a right to find"), reasonably could have been interpreted as describing a constitutionally impermissible rebuttable mandatory presumption. In *Washington v. Harris*, the petitioner challenged the following statement by the judge to the jury. "On the question of intent, you may infer that a person intends that which is the natural and necessary and probable consequences of the acts performed by him and unless the act was done under circumstances to preclude the existence of such intent, you have a right to find from the results produced an intention to effect it." *See* 650 F.2d at 450. The Court of Appeals held that this instruction, because it began permissively ("you may infer") and ended permissively ("you have a right to find"), could only have reasonably been understood to state a permissive inference. *Id.* at 453. Thus, while the jury charge at issue in the *Rivera* action offered the jury two constitutionally impermissible routes to a guilty verdict, the judge at Washington's trial did not, in charging the jury on the crime of which Washington was convicted, give the jury a single instruction that rea-

The State's argument that the charge at Rivera's trial clearly informed the jury of the correct legal rule also places heavy emphasis on the trial judge's statement that "the intent with which a crime has been committed rests upon the prosecution to establish it by evidence beyond a reasonable doubt." While, by this instruction, the judge correctly (albeit confusingly) charged the jury on the prosecution's burden of proof on the intent issue, this fact provides no basis for the Court to conclude that the jury could not reasonably have relied on a constitutionally invalid interpretation of the judge's conclusive mandatory presumption instruction. As the Supreme Court stated in *Sandstrom v. Montana, supra,* a beyond-a-reasonable-doubt instruction "is not rhetorically inconsistent with a conclusive or burden-shifting [mandatory] presumption [instruction]." 442 U.S. at 518–19 n.7, 99 S.Ct. at 2456–2457 n.7. Rather, the jury could reasonably have interpreted the two instructions to mean that the conclusive mandatory presumption was a mechanism through which the prosecution could satisfy its burden of proving beyond a reasonable doubt that Rivera intended Guy Keyes serious physical injury. *Accord, United States ex rel. Eccleston v. Henderson, supra,* 534 F.Supp. at 817.

The Court is accordingly unable to conclude that the jury at Rivera's trial would necessarily have understood any of the judge's later instructions to be rhetorically inconsistent with the incorrect understanding that the jury reasonably could have obtained from the judge's earlier conclusive mandatory presumption instruction.[5]

sonably could have been interpreted in a constitutionally invalid fashion.

5. Even if one of the judge's later instructions had been necessarily rhetorically inconsistent with the constitutionally invalid interpretation that the jury at Rivera's trial reasonably could have given the judge's conclusive mandatory presumption instruction, the Court would not thereby be able to state that the judge's charge as a whole clearly informed the jury of the correct rule of law, because it would be unable to conclude that the jury necessarily resolved such an inconsistency by rejecting the constitutionally invalid interpretation of the conclusive mandatory presumption instruction. The conclusive mandatory presumption instruction was the judge's first comment on intent and thus occupied a place of great prominence in the judge's charge on intent. Considered as a whole, the judge's charge used mandatory language and permissive language with about equal frequency. The jury did not send out any notes during its deliberations indicating that it was relying on one of the judge's other instructions to the exclusion of the conclusive mandatory presumption instruction. Thus, even if the Court were able to say that the jury necessarily must have either disregarded the constitutionally invalid interpretation of the conclusive mandatory presumption instruction or ignored one of the judge's later instructions, it would be wholly uncertain which of these courses the jury chose. *See Sandstrom v. Montana, supra,* 442 U.S. at 526, 99 S.Ct. at 2460.

The foregoing discussion demonstrates the difference between the *Rivera* action and the case recently faced by the Court of Appeals for this Circuit in *Nelson v. Scully, supra.* In that case, the court assumed for the purposes of argument that *Wainwright v. Sykes, supra,* imposed no bar to Nelson's federal habeas corpus petition, 672 F.2d at 270, and further assumed that the judge at Nelson's trial had given an instruction that, like the mandatory presumption instructions given at Rivera's and Arroyo's trials, reasonably could have been interpreted in a constitutionally invalid manner, *id.* at 271–272. The court held, upon reviewing the charge as a whole in the manner described and undertaken in text, that the judge's other instructions had made it "clear throughout" his charge that New York law permitted, but did not require, the jury to find the requisite intent to kill upon finding that the victim's death was a natural and probable consequence of one of Nelson's acts. *Id.* at 272 (quoting *People v. Green,* 50 N.Y.2d 891, 893, 430 N.Y.S.2d 267, 268, 408 N.E.2d 675, 675 (1980)). In its paragraph explaining this holding, the *Nelson v. Scully* court emphasized that the judge at Nelson's trial, like the judges at Rivera's and Arroyo's trials, correctly instructed the jury (1) that the jury could only find Nelson guilty of murder if it found that Nelson acted with the "intent" to kill the victim, (2) that an "intent" to kill means a "conscious objective" to cause death, and (3) that the prosecution was required to prove such an intent beyond a reasonable doubt. 672 F.2d at 272–273. However, as the Court has explained in text, and as the *Nelson v. Scully* court must have realized, instructions such as these are perfectly consistent with, and hence do not necessarily incline a reasonable jury to disregard, a mandatory presumption instruction. The Court accordingly does not believe that the outcome in *Nelson v. Scully* depended on the fact that the trial judge correctly instructed the jury on the elements of the crime in question, on the meaning of "intent," and on the prosecu-

Therefore, the Court is unable to find, upon reviewing the judge's charge as a whole, that the jury at Rivera's trial was clearly informed of the correct rule of law notwithstanding the constitutionally infirm conclusive mandatory presumption instruction. The judge at Rivera's trial thus committed error of constitutional dimension in charging the jury on intent. *Accord, Ramirez v. Jones*, 530 F.Supp. 345, 348–350 (S.D.N.Y. 1981) (holding virtually identical charge to have been constitutionally deficient). *But see Dudley v. Dalsheim*, 526 F.Supp. 88, 91 (S.D.N.Y.1981) (holding similar charge to have been constitutionally adequate). This error requires that Rivera's conviction of first-degree manslaughter be vacated unless the error may be found harmless.[6] Before dealing with the harmless error question, however, the Court discusses the constitutional sufficiency of the intent charge given at Arroyo's trial.

■ The judge at Arroyo's trial, in similar fashion to the judge at Rivera's trial, told the jury that it could only find Arroyo guilty of attempted murder if it found beyond a reasonable doubt that Arroyo intended to cause the death of Raymond Bernard. However, in her final instruction to the jury on the general subject of intent, the judge told the jury that "people are presumed to intend the natural, probable and logical consequence of their acts." The jury could reasonably have understood this instruction to state that, if it found that the death of Raymond Bernard was a natural, probable and logical consequence of an act performed by Arroyo, the jury was then *required* to find that Arroyo had the requisite intent to cause the death of Raymond Bernard. This portion of the judge's charge is thus perfectly consistent with, and reasonably could have been understood by the jury to describe, a constitutionally impermissible conclusive mandatory presumption. Under the previously stated principles, the judge's charge was rendered constitutionally infirm by this mandatory presumption instruction unless the charge, when considered in its entirety, clearly informed the jury of the correct rule of law, that is, unless the charge as a whole clearly informed the jury, contrary to this particu-

tion's burden of persuasion. Rather, since the majority opinion in *Nelson v. Scully* is substantially informed by the view that the trial judge, instead of giving the standard "boiler-plate" charge on intent, repeatedly "hammered" at the jury with permissive language, 672 F.2d at 272, the Court believes that the *Nelson v. Scully* decision is better understood to depend on the court's view that the trial judge's charge on intent contained permissive language that was rhetorically inconsistent with the judge's mandatory language, and, more importantly, that the charge featured this permissive language significantly more prominently and frequently than the mandatory language. Since the judge at Rivera's trial gave what can only be described as a "boiler-plate" charge on intent, and since this charge did not use permissive language with greater frequency and prominence than it used mandatory language, *Nelson v. Scully* would not control the adjudication of Rivera's petition even if the judge at Rivera's trial had used permissive language in his intent charge that was necessarily rhetorically inconsistent with his mandatory language.

**6.** The State's other arguments in the *Rivera* action border on being frivolous. First, the State argues that *Sandstrom v. Montana, supra*, a decision heavily relied upon by Rivera, should not be given retroactive effect and thus cannot form the basis for vacating any convic-

tion that occurred before its enunciation in 1979. However, since the decisions on which *Sandstrom v. Montana* rests were given retroactive effect, *see Hankerson v. North Carolina*, 432 U.S. 233, 240, 97 S.Ct. 2339, 2342, 53 L.Ed.2d 306 (1977) (giving retroactive effect to *Mullaney v. Wilbur, supra*); *Ivan V. v. City of New York*, 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659 (1972) (giving retroactive effect to *In re Winship, supra*), the Court is convinced that *Sandstrom v. Montana* must be given retroactive effect as well. *Accord, Dietz v. Solem*, 640 F.2d 126, 130–31 (8th Cir. 1981); *People v. Getch, supra*, 50 N.Y.2d at 464, 429 N.Y.S.2d at 582–82, 407 N.E.2d at 428. Second, the State argues that the Court should, in determining how the jury reasonably could have interpreted the judge's instruction that "[a] person is presumed to intend the natural and probable consequences of his act," be attentive to a purported difference between the legal and dictionary meanings of the word "presume." The Court finds it incredible that the State would make this argument, in light of the fact that the Supreme Court's decision in *Sandstrom v. Montana, supra*, was in large measure based on the *identity* between the legal and dictionary definitions of the word "presume." *See* 442 U.S. at 517, 99 S.Ct. at 2455.

lar instruction, that New York law *permitted*, but did not *require*, the jury to find the requisite intent to cause the death of Raymond Bernard if it first found that the death of Raymond Bernard was a natural and probable consequence of an act performed by Arroyo.

In arguing that the charge at Arroyo's trial, when considered as a whole, clearly informed the jury of the correct rule of law, the State relies on the undisputable facts that (1) the jury reasonably could have understood a different portion of the charge as entitling it to use a permissive inference to find the requisite intent, and (2) the judge clearly told the jury that the prosecution bore the burden of proving beyond a reasonable doubt that Arroyo intended to cause the death of Raymond Bernard. The Court's analysis of this argument is guided by the same two observations that predicated the Court's analysis of the similar argument made by the State in the context of the *Rivera* action. Once again, the State's argument fails because the constitutionally invalid interpretation that the jury reasonably could have given the mandatory presumption instruction was not necessarily rhetorically inconsistent with any of the other instructions that the judge gave on intent. First, the judge's mandatory presumption instruction was not, if interpreted in the constitutionally infirm manner that the Court has hypothesized, rhetorically in-

consistent with her permissive inference instruction; to explain, whereas the mandatory presumption described by the judge could only be applied if the jury first found that the death of Raymond Bernard was a "natural, probable and logical" consequence of an act performed by Arroyo, the permissive inference described by the judge was available upon the jury's consideration of "all the [relevant] evidence which may indicate intent." Nor was the constitutionally invalid interpretation of the mandatory presumption instruction inconsistent with the judge's beyond-a-reasonable-doubt instruction, because the jury could reasonably have thought that the mandatory presumption instruction provided the prosecution with a mechanism for meeting the burden of proof set forth in the beyond-a-reasonable-doubt instruction.[7] Thus, neither the judge's permissive inference instruction nor her beyond-a-reasonable-doubt instruction provides a basis for the Court to conclude that the judge's charge, when considered as a whole, clearly informed the jury that New York law *permitted*, but did not *require*, the jury to find the requisite intent to cause the death of Raymond Bernard if it first found that the death of Raymond Bernard was a natural and probable consequence of an act performed by Arroyo.

The judge at Arroyo's trial thus committed error of constitutional dimension in charging the jury on the subject of intent.[8]

**7.** Even if either the judge's permissive inference instruction or her beyond-a-reasonable-doubt instruction had been necessarily rhetorically inconsistent with the constitutionally invalid interpretation that the jury at Arroyo's trial reasonably could have given the judge's mandatory presumption instruction, the Court would not thereby be able to state that the judge's charge as a whole clearly informed the jury of the correct rule of law, because it would be unable to conclude that the jury necessarily resolved such an inconsistency by rejecting the constitutionally invalid interpretation of the mandatory presumption instruction. The mandatory presumption instruction, being the last instruction that the judge gave to the jury, occupied the most prominent position in the judge's charge of any of her instructions on intent. Considered as a whole, the judge's charge did not use permissive language with significantly greater frequency than it used mandatory language. The Court notes that the

jury deliberated for over six hours without being able to decide the intent question, then received the mandatory presumption instruction, and then convicted Arroyo on all counts twenty-five minutes later. This sequence hardly indicates that the jury excluded the mandatory presumption instruction from its deliberations. Thus, even if the Court were able to say that the jury necessarily must have either disregarded the constitutionally invalid interpretation of the mandatory presumption instruction or ignored one of the judge's earlier instructions, it would be wholly uncertain which of these courses the jury chose. *See Sandstrom v. Montana, supra,* 442 U.S. 526, 99 S.Ct. 2460, and the discussion of *Nelson v. Scully, supra,* in note 5, *supra.*

**8.** The State's other arguments in the *Arroyo* action border on being frivolous. First, the State argues that the instruction challenged by

Having therefore found that both Rivera's trial and Arroyo's trial were infected by constitutional errors, the Court turns to the question of whether either of these errors may be found to have been harmless.

## II

■ The Supreme Court has imposed narrow limitations on the ability of a reviewing court to conclude that a federal constitutional error committed during a criminal trial was "harmless." Some constitutional rights are so basic to a fair trial that their infraction may never be treated as harmless error. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). Those federal constitutional violations that do not fall in the category of infractions that demand "automatic reversal" may be deemed nonprejudicial in a given case, but only if the reviewing court is able to declare a belief that the violation in question was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Forman v. Smith,* 633 F.2d 634, 642 (2d Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981).

The Supreme Court has not yet decided whether an error such as occurred at the trials of Rivera and Arroyo may ever be declared harmless. *McKenzie v. Montana,* 449 U.S. 1050, 1052 n.2, 101 S.Ct. 626, 628 n.2, 66 L.Ed.2d 507 (1980) (Marshall, J., dissenting from denial of certiorari); *see Sandstrom v. Montana, supra,* 442 U.S. at 526–27, 99 S.Ct. at 2460–2461 (expressly leaving question open). However, in *Washington v. Harris, supra,* the Court of Appeals for this Circuit reversed a district court decision granting a habeas corpus petition based on the same theory as the petitions filed by Rivera and Arroyo; the Court remanded the action for consideration of whether the erroneous instruction was harmless. 650 F.2d at 453–54. In this Circuit, then, constitutional violations such as the Court is presently considering may, in an appropriate case, be declared harmless. *Accord, Nelson v. Scully, supra,* 672 F.2d at 279 (Oakes, J., dissenting). *See also United States v. Williams,* 665 F.2d 107, 110 (6th Cir. 1981); *United States v. Winter, supra,* 663 F.2d at 1144–45; *McGuinn v. Crist,* 657 F.2d 1107, 1108–09 (9th Cir. 1981); *Jacks v.*

Arroyo, to wit, "people are presumed to intend the natural, probable and logical consequence of their acts," materially differs from the instruction held invalid by the Supreme Court in *Sandstrom v. Montana, supra,* which instruction stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *See* 442 U.S. at 513, 99 S.Ct. at 2453. Specifically, the state contends that the instruction at issue in the *Arroyo* action, unlike the instruction considered in *Sandstrom v. Montana,* was not characterized by the trial judge as a principle of law. Apparently, the State's argument is that, since the judge at Arroyo's trial prefaced her challenged instruction with the phrase "[b]y agreement I can tell you that," the jury must have interpreted this instruction as something akin to a new stipulated fact rather than a rule of law. Accepting for present purposes the dubious proposition that the instruction would pass constitutional muster if the jury did understand it in this fashion, the Court is unable to conclude that this was indeed the jury's understanding. In the Court's view, it is at least equally likely that the jury understood the judge's prefatory comment to mean that the parties had agreed upon a correct statement of a principle of law.

Second, the State contends that where, as here, the defendant's act has merely caused a person to be wounded, a mandatory presumption instruction such as the judge gave at Arroyo's trial only requires the jury, if it finds that the wounding was a natural and probable consequence of the act, to find that the defendant intended to *wound* the victim. Thus, the State takes the position that the jury at Arroyo's trial, while it could have used the instruction to find that Arroyo intended to cause Raymond Bernard serious injury, could not have used the instruction to find that Arroyo intended to cause Raymond Bernard's *death.* The obvious flaw in this argument is that the jury did not necessarily interpret the instruction in question in the fashion suggested by the State. In the Court's view, the jury could reasonably have understood this instruction to state that, if the jury found that the death of Raymond Bernard, though it did not actually occur, was one of the natural and probable consequences of an act performed by Arroyo, the jury was required to find in turn that Arroyo intended to cause the death of Raymond Bernard. Plainly, if the jury adopted this interpretation rather than the one advanced by the State, the jury may indeed have used the challenged instruction to find that Arroyo intended to cause Raymond Bernard's death.

*Duckworth,* 651 F.2d 480, 485–87 (5th Cir. 1981); *Dietz v. Solem, supra* note 6, 640 F.2d at 131 (all holding that constitutionally infirm mandatory presumption instructions similar to those at issue here may be found harmless).

▮ In order to conclude that either Rivera or Arroyo was not prejudiced by the federal constitutional violation that occurred at his trial, the Court must, as noted, be able to declare a belief that this violation was harmless beyond a reasonable doubt. *Chapman v. California, supra,* 386 U.S. at 24, 87 S.Ct. at 828. There is some confusion as to the proper application of *Chapman's* reasonable-doubt standard where, as here, the putatively harmless constitutional error was created by a jury charge that reasonably could have been interpreted to describe a constitutionally invalid mandatory presumption. One line of cases supports a rule that a reviewing court should determine whether such an error was harmless by asking if, given the evidence in its entirety, the jury would beyond a reasonable doubt have found the presumed fact if the mandatory presumption instruction had not been given. *See, e.g., Jacks v. Duckworth, supra,* 651 F.2d at 487 (error identical to those at issue here found harmless because evidence was "overwhelming" that defendant acted with the requisite intent). A second line of cases states that a reviewing court faced with such an error should inquire whether it is certain beyond a reasonable doubt that the jury did not find the presumed fact by applying the mandatory presumption that it reasonably could have understood the judge's charge to describe. *See, e.g., United States v. Williams, supra,* 665 F.2d at 110. The decision of the Supreme Court in *County Court v. Allen, supra,* provides the complete answer to this question. There the Court

stated that "it [is] irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive [inference], that there is ample evidence in the record other than the presumption to support a conviction." 442 U.S. at 160, 99 S.Ct. at 2226. This Court therefore holds, in accordance with the second of the above-cited lines of cases, that harmless error analysis of a constitutionally invalid mandatory presumption instruction should proceed from an inquiry whether the record permits the reviewing court to conclude beyond a reasonable doubt that the jury did not apply the presumption in arriving at its verdict. *See McKenzie v. Montana, supra,* 449 U.S. at 1055, 101 S.Ct. at 629 (Marshall, J., dissenting from denial of certiorari) ("court must ask whether the defective instruction may have contributed to the jury verdict" in assessing whether erroneous mandatory presumption instructions such as were given here were harmless).

▮ Thus, the question to be answered in both the *Rivera* action and the *Arroyo* action is whether the Court is certain beyond a reasonable doubt that the jury did not find the intent element of the crimes in question by concluding that it was required, having found that the defendant performed an act having certain natural and probable consequences, to proceed to find that the defendant intended those consequences. The Court is frank to say that, in light of the general verdicts that are usually rendered in criminal trials, it would expect to have the requisite degree of certainty that a mandatory presumption instruction was harmless only in an exceptional case. *See* Note, *Harmful Use of Harmless Error in Criminal Cases,* 64 Cornell L.Rev. 538, 553– 55 (1979).[9] For the reasons that follow, the

---

**9.** There are, to be sure, some cases where a reviewing court could indeed be certain beyond a reasonable doubt that an error such as occurred at Rivera's and Arroyo's trials did not affect the jury's verdict in the fashion described above. For example, a reviewing court would have the requisite certainty where the defendant admitted that he intentionally murdered the victim but claimed that he did so in self-defense. *Washington v. Harris, supra,* 650 F.2d

at 453–54; *see, e.g., United States ex rel. Tsirizotkis v. LeFevre,* 534 F.Supp. 40, 42 (E.D. N.Y.1981), *aff'd mem.,* No. 81–2107 (2d Cir. Sept. 22, 1981). Also, a reviewing court should find a mandatory presumption instruction harmless with respect to any count that does not include among its elements the intent that the mandatory presumption instruction invited the jury to find. *See, e.g., Holloway v. McElroy,* 632

Court concludes that neither the *Rivera* action nor the *Arroyo* action is a case of this variety.

 The State's position on the harmless error question is based on its assertion that the intent issue, while not expressly conceded by Rivera and Arroyo at their trials, was not seriously contested by them either. Apparently, the State believes that an error such as occurred at Rivera's and Arroyo's trials must always be declared harmless unless the defendant, either by direct testimony or the argument of counsel, has affirmatively advanced the intent issue. This argument, if accepted, would completely undermine that rationale for holding that mandatory presumption instructions are constitutionally infirm. It would be the height of absurdity for a reviewing court (1) to hold that a trial judge's charge was constitutionally invalid because it contained a rebuttable mandatory presumption instruction that shifted the prosecution's burden of persuasion on the intent issue to the defendant, but then (2) to call the error harmless because the defendant did not vigorously contest the intent issue. The whole premise for the constitutional attack on such mandatory presumption instructions is that they shift the burden of persuasion to the defendant on an issue with respect to which the defendant is perfectly entitled to prevail even if he does nothing.[10] In the Court's view, then, where the defendant has not expressly conceded that he acted with the requisite intent, harmless-error analysis of mandatory presumption instructions such as the

judges gave at Rivera's and Arroyo's trials should not depend on how vigorously the defendant contested the intent issue. Instead, the proper inquiry is whether the reviewing court is certain beyond a reasonable doubt that the jury did not employ the mandatory presumption instruction in making its finding that the defendant had the requisite intent. *Accord, Burton v. Bergman,* 649 F.2d 428, 432 (6th Cir. 1981); *Dietz v. Solem, supra* note 6, 640 F.2d at 131. *But see United States v. Winter, supra,* 663 F.2d at 1144 (unconstitutional mandatory presumption instruction harmless because "appellants are not claiming that they did not intend the natural and probable or ordinary consequences of their acts"); *McGuinn v. Crist, supra,* 657 F.2d at 1108–09 (unconstitutional mandatory presumption instruction harmless "in the absence of any positive contention" by the defendant that he lacked requisite intent); *United States ex rel. Eccleston v. Henderson, supra,* slip op. at 9–10 (unconstitutional mandatory presumption instruction harmless because at trial "there was ... no real question about intent").

 Upon engaging in this inquiry in the context of the *Rivera* action, the Court is unable to declare the error committed at Rivera's trial to have been harmless because it is unable to find beyond a reasonable doubt that the mandatory presumption instruction was not employed by the jury in reaching its guilty verdict on the first-degree manslaughter count. In order to find Rivera guilty of first-degree manslaughter, the jury was required to find (1) that Riv-

F.2d 605, 635 (5th Cir. 1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981); *United States v. Continental Group, Inc.,* 603 F.2d 444, 464 (3d Cir. 1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). In these two types of cases, either intent was never a legal issue with respect to the crime charged or the defendant himself made a concession that removed intent as an issue, leaving the reviewing court certain beyond a reasonable doubt that the jury's verdict was not arrived at by use of the mandatory presumption instruction.

**10.** A similarly illogical result would be for a reviewing court to find a conclusive mandatory presumption instruction constitutionally infirm

because it entirely removed the element of intent as a factual issue, but then to call the error harmless because of the defendant's failure to ask the jury not to find that fact. Aside from the illogic that would inhere in a decision condemning the defendant's failure to litigate a factual question that the judge ultimately removed from the jury's consideration, such a holding would neglect the principle that the defendant is not required to do anything at all to be entitled to a jury determination of each element of the crime charged, and would ignore the fact that the defendant occasionally prevails at trial on an issue as to which he has neither offered testimony nor made argument.

era caused the death of Guy Keyes, and (2) that Rivera, in so doing, intended to cause Guy Keyes serious physical injury. At his trial, Rivera vigorously contested the first of these elements by testifying that he never stabbed Guy Keyes. However, adoption of this defense did not require Rivera to concede that he had intended to cause Guy Keyes serious physical injury. Indeed, Rivera, by denying that he had pursued Guy Keyes with the intent of stabbing him, contested this element as well. At the conclusion of the trial, then, the issue of whether Rivera intended to cause Guy Keyes serious physical injury was submitted to the jury for its determination. The jury, since it found Rivera guilty of first-degree manslaughter, plainly found that Rivera did have this intention. Given the fact that the judge gave the mandatory presumption instruction as the first sentence of his general charge on intent, and then reiterated this instruction at the end of his general charge on intent, there is simply no way the Court can say that it is certain beyond a reasonable doubt that the jury did not employ the mandatory presumption instruction to arrive at its finding that Rivera intended to cause Guy Keyes serious physical injury. The Court is thus unable to find beyond a reasonable doubt that the error committed at Rivera's trial did not affect the jury's verdict, and accordingly may not declare that error to have been harmless.

■ Turning to the *Arroyo* action, the Court reaches a similar conclusion. In order to find Arroyo guilty of attempted murder, the jury was required to find (1) that Arroyo fired a loaded gun at Raymond Bernard, thereby causing Raymond Bernard to be wounded, and (2) that Arroyo, in so doing, intended to cause the death of Raymond Bernard. At his trial, Arroyo placed both of these elements in issue. Sue Lydia Pratts' testimony that Arroyo never fired a gun at all created an issue with respect to the first element. Arroyo's own testimony that he had no recollection of firing a gun created an issue whether Arroyo had, in the short period of time involved, formed the intent to kill constituting the second element. Thus, Arroyo did not ever concede that he had intended to cause the death of Raymond Bernard. At the conclusion of the judge's charge, then, this issue was submitted to the jury for its determination. The jury, since it found Arroyo guilty of attempted murder, plainly found that Arroyo did intend to cause the death of Raymond Bernard. Given that the judge gave the mandatory presumption instruction in response to a specific jury request, after six and one-half hours of deliberation, for additional instructions on intent, and that the jury's verdict was rendered only twenty-five minutes after the judge gave the mandatory presumption instruction, there is simply no way the Court can say that it is certain beyond a reasonable doubt that the jury did not employ the mandatory presumption instruction to arrive at its finding that Arroyo intended to cause the death of Raymond Bernard. The Court is thus unable to find beyond a reasonable doubt that the error committed at Arroyo's trial did not affect the jury's verdict on the attempted murder count, and accordingly may not declare the error to have been harmless with respect to that count.

## CONCLUSION

Rivera and Arroyo have shown that the judges at their state trials each committed error of constitutional dimension in instructing the jury on the subject of intent. The Court is unable to find either error to have been harmless. Therefore, the Court concludes that the petitions filed by Arroyo and Rivera must be granted.

The Court is frank to say that it has not reached this decision easily. A federal district judge does not lightly declare that two justices of the Supreme Court of the State of New York have committed trial errors of constitutional dimension and that the New York appellate courts have missed several opportunities to correct these errors. Moreover, while no decision by the Court of Appeals for this Circuit controls this Court's adjudication of Rivera's and Arroyo's petitions, the Court is well aware that the Court of Appeals has never affirmed a dis-

trict court decision that granted a habeas corpus petition in reliance on *Sandstrom v. Montana.*

However, while these considerations weigh heavily on the Court's mind, the Court is bound to follow the decisions of the United States Supreme Court. *Sandstrom v. Montana* teaches that, if the jury charge at a defendant's trial included a mandatory presumption instruction on the subject of intent, a reviewing court must vacate the defendant's conviction unless it is able to state a belief either (1) that the jury, upon hearing the judge's charge as a whole, could not reasonably have interpreted the charge to state a constitutionally impermissible rule of law, or (2) that any constitutional error that did occur was harmless beyond a reasonable doubt. After a careful consideration of the facts relevant to the *Rivera* action and the *Arroyo* action, the Court has concluded that it cannot honestly and in good conscience state such a belief with respect to either action.

Accordingly, the petitions filed in 80 Civ. 7447(RJW) and 81 Civ. 1280(RJW) are both granted. Rivera is entitled to a new trial on the first-degree manslaughter count of which he was convicted; he shall be released from custody if he is not retried within sixty (60) days of the date of this decision. Arroyo is entitled to a new trial on the attempted murder count of which he was convicted; he shall be released from custody if not retried within sixty (60) days of the date of this decision.

It is so ordered.